**IN THE  UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **DAWN BALL,** | : | **CIVIL NO. 1:11-CV-1834** |
| | : | |
| **Plaintiff,** | : | **(Chief Judge Kane)** |
| | : | |
| **v.** | : | **(Magistrate Judge Carlson)** |
| | : | |
| | : | |
| **DR. FAMIGLIO, et al.,** | : | |
| | : | |
| **Defendants.** | : | |

**REPORT AND RECOMMENDATION**

**I.     Statement of Facts and of the Case**

**A.     Dawn Marie Ball's Litigation History**

Dawn Ball's current circumstances inspire both sorrow and concern.  Dawn

Ball is an inmate housed in the Restricted Housing Unit at the State Correctional

Institution (SCI) Muncy, who by her own account suffers from a cascading array of

severe mental illnesses, and who has candidly acknowledged that she is profoundly

disturbed, informing the Court that:

My mental health is declining. I suffer from OCD so bad I scrub my

hands till they bleed, confusion, PTSD, disassociative disorder, I smell,

see and hear things not there, severely stressed, phobias, agoraphobia,

1

severe anxiety, lack of interest in things, lack of arousal in things, racing

thoughts, suicidal, cognitive problems and disorders, lack of interest in

life, disoriented, dizzyness, paranoid–schizophrenic, constant worry,

frightened scared, can't properly care for myself, tics, bipolar, manic

depressive, mood swings that are so severe, can't think clearly....

Ball v. Beard, No. 1:09-CV-845 (Doc. 42, pp.6-7)

Furthermore. Ball is also an inmate who has reported to the Court that she

engages in multiple episodes of destructive, self-defeating and senseless behavior.

For example, recurring themes in Ball's lawsuits include Ball's penchant for smearing

feces on herself and her cell, her destruction of her own clothing, and her use of her

clothing to plug her toilet and flood her cell with water and human waste.  Ball is

also, by her own admission, an inmate with a propensity for sudden, explosive rages,

as illustrated by the civil complaint which she has filed Ball v. Barr, No.1:11-CV-

2240 (M.D.Pa.).  In this complaint, Ball describes an episode in which a discussion

regarding the aesthetic qualities of a piece of cornbread escalated in a matter of

moments into a profanity-laced wrestling match over a food tray.

While she suffers from paranoia, schizophrenia, and experiences these visual

and auditory hallucinations, Ball is also a prodigious federal court litigant, bringing

numerous lawsuits based upon her perception of the events that take place around her

in prison.  Indeed, at present Ball has a total of twenty-two lawsuits pending before this Court.[1]  Ball is also a prodigiously unsuccessful litigant, who has had at least three prior lawsuits dismissed either as frivolous or on the grounds that the lawsuit failed to state a claim upon which relief could be granted.

## B.   Ball's Current Lawsuit

It is against the backdrop that Ball instituted the current lawsuit.  In this *pro se* complaint, which Ball filed on October 4, 2011, the plaintiff names 11 defendants and recites a series of medical and scheduling complaints which she has against these prison staff.

At the outset, Ball alleges that four defendants–Lieutenants Hummel, Neese, Barto and Dr. Famiglio–have refused and canceled eye appointments for her for two years.  According to Ball, as a result of this failure to treat her eyes, "I'm losing my

---

[1]See, e.g., Ball v. SCI Muncy, No.1:08-CV-700 (M.D.Pa.); Ball v. SCI-Muncy, No. 1:08-CV-701 (M.D.Pa.); Ball v. Hill, No.1:09-CV-773 (M.D.Pa.); Ball v. Beard, No. 1:09-CV-845 (M.D.Pa.); Ball v. Lamas, No. 1:09-CV-846, (M.D. Pa.); Ball v. Oden , No 1:09-CV-847 (M.D.Pa.); Ball v. Bower, No. 1:10-CV-2561 (M.D.Pa.); Ball v. Sisley, No. 1:11-CV-877 (M.D.Pa.); Ball v. Struther, No. 1:11-CV-1265 (M.D.Pa.); Ball v. Hummel, No. 1:11-CV-1422 (M.D.Pa.); Ball v. Beckley, No. 1:11-CV-1829 (M.D.Pa.); Ball v. Sipe, No. 1:11-CV-1830 (M.D.Pa.); Ball v. Craver, No. 1:11-CV-1831 (M.D.Pa.); Ball v. Powley, No. 1:11-CV-1832 (M..D.Pa.); Ball v. Cooper, No. 1:11-CV-1833 (M.D.Pa.); Ball v. Famiglio, No. 1:11-CV-1834 (M.D.Pa.); Ball v. Eckroth, No. 1:11-CV-2238 (M.D.Pa.); Ball v. Campbell, No. 1:11-CV-2239 (M.D.Pa.); Ball v Barr, No. 1:11-CV-2240 (M.D.Pa.); Ball v Giroux, No. 1:12-CV-10 (M.D.Pa.); Ball v Giroux, No. 1:12-CV-11 (M.D.Pa.); Ball v Curham, No. 1:12-CV-12 (M.D.Pa.).

vision." (Doc. 1)  Ball further alleges that Lieutenant Hummel has also refused her other medical appointments in March and April 2011.  The nature of these medical appointments is not further described by Ball.

Ball's October 4, 2011, complaint then alleges that another defendant, Dawn Werner, has not ordered new glasses for the plaintiff, to replace a pair of glasses broken in September 2011.  Ball further complains that a prison psychologist, defendant D'Addio, gave her medical records to a state hospital without her permission, and "told my private business to corrections officers."  According to Ball this "private business" involved the fact that Ball "was going to have a pysch evaluation done for the court." (Id.)

Ball's October 4, 2011, complaint then levels another allegation against Dr. Famiglio.  This allegation, ironically, seems to involve the doctor providing some extra degree of medical care to Ball.  Specifically, Ball complains that the doctor has offered her skin lotion, and other medicines, if she refrains from signing up for sick calls, conduct that Ball describes as a "bribe."(Id.)

Ball further alleges that two corrections staff, Judy Rowe and Gloria Duggan, "made derogatory and slanderous statements against me on their grievance responses. They said I put my fingers in feces and smear it on [medical] requests which is not true." (Id.)  Ball also contends that these medical scheduling staff, and another

4

medical scheduler identified only as Jane Doe, have improperly refused to handle her medical request forms because of these claims that Ball smears fecal material on the forms. (Id.)

In addition, Ball's complaint reflects that she has a concern that pap smear test results may reveal abnormalities, but that four defendants–Dr. Famiglio, Dr. Gothwal, Judy Rowe, and Gloria Duggan–"won't tell me the results or they say the results are fine and they are not." (Id.)  On the basis this bald assertion by Ball that she does not believe medical staff when they tell her she is fine, the plaintiff seeks to sue these individual defendants. (Id.)

Further, Ball alleges that Dr. Gothwal, and Dr. Famiglio declined to see her on three occasions in April 2011 and twice in May 2011.  Ball does not indicate what, if any, medical problems she was experiencing at the time that these physicians declined to see her on these specific dates. (Id.)

Finally, Ball alleges generally that the defendants have not provided her with adequate health care, and have inappropriately discontinued various medications which she has received in the past. (Id.)

Ball's complaint then provides a confused and contradictory account of her efforts to exhaust here administrative remedies regarding these various medical complaints, stating: "I believe I exhausted all these claims.  If not, I was on grievance

restriction or my mail was held. . . .They refused to send my mail and they made me miss the deadlines around 5/3/11 and did not give me the mail with grievances back till around 5-6-11." (Id.)

On the basis of these allegations, Ball sues each of the 11 named defendants, seeking injunctive and declaratory relief, as well as punitive and compensatory damages of $5,000,000 each. (Id.) The defendants have now filed a motion to dismiss Ball's complaint, (Doc. 51), arguing that Ball has failed to exhaust her administrative remedies and has further failed to state claims upon which relief can be granted. (Id.) This motion has been fully briefed by the parties, (Docs. 52, and 63), and is now ripe for resolution.  For the reasons set forth below, it is recommended that this motion to dismiss be granted, in part, and denied, in part, as follows:

>    II.    **Discussion**

>    A.    **Rule 12(b)(6) and Rule 56– The Governing Legal Standards**

The defendant has filed a motion to dismiss this complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure, which provides that a complaint should be dismissed for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).  With respect to this benchmark standard for legal sufficiency of a complaint, the United States Court of Appeals for the Third Circuit has aptly noted the evolving standards governing pleading practice in federal court, stating that:

6

> Standards of pleading have been in the forefront of jurisprudence in recent years. Beginning with the Supreme Court's opinion in <u>Bell Atlantic Corp. v. Twombly,</u> 550 U.S. 544 (12007) continuing with our opinion in <u>Phillips v. County of Allegheny</u>, 515 F.3d 224, 230 (3d Cir. 2008) and culminating recently with the Supreme Court's decision in <u>Ashcroft v. Iqbal</u> –U.S.–, 129 S.Ct. 1937 (2009) pleading standards have seemingly shifted from simple notice pleading to a more heightened form of pleading, requiring a plaintiff to plead more than the possibility of relief to survive a motion to dismiss.

<u>Fowler v. UPMC Shadyside</u>, 578 F.3d 203, 209-10 (3d Cir. 2009).

In considering whether a complaint fails to state a claim upon which relief may be granted, the court must accept as true all allegations in the complaint and all reasonable inferences that can be drawn from the complaint are to be construed in the light most favorable to the plaintiff. <u>Jordan v. Fox Rothschild, O'Brien & Frankel, Inc.</u>, 20 F.3d 1250, 1261 (3d Cir. 1994). However, a court "need not credit a complaint's bald assertions or legal conclusions when deciding a motion to dismiss." <u>Morse v. Lower Merion Sch. Dist.</u>, 132 F.3d 902, 906 (3d Cir. 1997). Additionally a court need not "assume that a ... plaintiff can prove facts that the ... plaintiff has not alleged." <u>Associated Gen. Contractors of Cal. v. California State Council of Carpenters</u>, 459 U.S. 519, 526 (1983). As the Supreme Court held in <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544 (2007), in order to state a valid cause of action a plaintiff must provide some factual grounds for relief which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of

actions will not do." Id. at 555.  "Factual allegations must be enough to raise a right to relief above the speculative level." Id.  In keeping with the principles of Twombly, the Supreme Court has underscored that a trial court must assess whether a complaint states facts upon which relief can be granted when ruling on a motion to dismiss.  In Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937 (2009), the Supreme Court held that, when considering a motion to dismiss, a court should "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." Id. at 1950.  According to the Supreme Court, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. at 1949.  Rather, in conducting a review of the adequacy of complaint, the Supreme Court has advised trial courts that they must:

> [B]egin by identifying pleadings that because they are no more than conclusions are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations.  When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

Id. at 1950.

Thus, following Twombly and Iqbal a well-pleaded complaint must contain more than mere legal labels and conclusions.  Rather, a complaint must recite factual allegations sufficient to raise the plaintiff's claimed right to relief beyond the level of mere

speculation.  As the United States Court of Appeals for the Third Circuit has stated:

> [A]fter Iqbal, when presented with a motion to dismiss for failure to state a claim, district courts should conduct a two-part analysis. First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal  conclusions.  Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to  show that the plaintiff has a "plausible claim for relief." In other words, a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to "show" such an entitlement with its facts.

Fowler, 578 F.3d at 210-11.

In  practice, consideration of the legal sufficiency of a complaint entails a three-step analysis:  "First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.' Iqbal, 129 S.Ct. at 1947.  Second, the court should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth.' Id. at 1950.  Finally, 'where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.' Id." Santiago v. Warminster Tp., 629 F.3d 121, 130 (3d Cir. 2010).

In addition to these pleading rules, a civil complaint must comply with the requirements of Rule 8(a) of the Federal Rule of Civil Procedure which defines what a complaint should say and provides that:

(a) A pleading that states a claim for relief must contain (1) a short and plain statement of the grounds for the court's jurisdiction, unless the court already has jurisdiction and the claim needs no new jurisdictional support; (2) a short and plain statement of the claim showing that the pleader is entitled to relief; and (3) a demand for the relief sought, which may include relief in the alternative or different types of relief.

### B.    Legal Standards Governing Eighth Amendment "Deliberate Indifference" Claims in a Prison Medical Context

These pleading principles apply with particular force to claims, like those made by Ball, which are premised on the degree of medical care which a prisoner receives. Liberally construed, the gravamen of Ball's complaint is that prison officials have violated her rights under the Eighth Amendment to the United States Constitution by displaying "deliberate indifference" to this inmate's medical needs.  Ball faces an exacting burden in advancing this Eighth Amendment claim against prison officials in their individual capacities.  To sustain such a claim, she must plead facts which:

> [M]eet two requirements: (1) "the deprivation alleged must be, objectively, sufficiently serious;" and (2) the "prison official must have a sufficiently culpable state of mind." Farmer v. Brennan, 511 U.S. 825, 834, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994) (quotation marks and citations omitted). In prison conditions cases, "that state of mind is one of 'deliberate indifference' to inmate health or safety." Id. "Deliberate indifference" is a subjective standard under Farmer-the prison official-defendant must actually have known or been aware of the excessive risk to inmate safety.

Beers-Capitol v. Whetzel, 256 F.3d 120, 125 (3d Cir. 2001).

10

By including a subjective intent component in this Eighth Amendment benchmark, the courts have held that a mere generalized knowledge that prisons are dangerous places does not give rise to an Eighth Amendment claim. See Jones v. Beard, 145 F. App'x 743 (3d Cir. 2005)(finding no Eighth Amendment violation where inmate-plaintiff complained about cellmate who had a history of psychological problems, but where plaintiff failed to articulate a specific threat of harm during the weeks prior to an attack.)  In short, when "analyzing deliberate indifference, a court must determine whether the prison official 'acted or failed to act despite his knowledge of a substantial risk of serious harm.' Farmer v. Brennan, 511 U.S. 825, 841 (1994).  A prisoner plaintiff must prove that the prison official 'knows of and disregards an excessive risk to inmate health or safety.' Id . at 837." Garvey v. Martinez, 08-2217, 2010 WL 569852, at *6 (M.D.Pa. Feb. 11, 2010).

These principles apply with particular force to Eighth Amendment claims premised upon inadequate medical care.  In the medical context, a constitutional violation under the Eighth Amendment occurs only when state officials are deliberately indifferent to an inmate's serious medical needs. Estelle v. Gamble, 429 U.S. 97, 105 (1976).  To establish a violation of his constitutional right to adequate medical care in accordance with this standard, Ball is required to allege facts that demonstrates (1) a serious medical need, and (2) acts or omissions by prison officials

that indicate deliberate indifference to that need. <u>Rouse v. Plantier</u>, 182 F.3d 192, 197 (3d Cir. 1999).

Deliberate indifference to a serious medical need involves the "unnecessary and wanton infliction of pain." <u>Estelle</u>, 429 U.S. at 104. Such indifference may be evidenced by an intentional refusal to provide care, delayed provision of medical treatment for non-medical reasons, denial of prescribed medical treatment, denial of reasonable requests for treatment that results in suffering or risk of injury, <u>Durmer v. O'Carroll</u>, 991 F.2d 64, 68 (3d Cir. 1993), or "persistent conduct in the face of resultant pain and risk of permanent injury," <u>White v. Napoleon</u>, 897 F.2d 103, 109 (3d Cir. 1990).

However, it is also clear that the mere misdiagnosis of a condition or medical need, or negligent treatment provided for a condition, is not actionable as an Eighth Amendment claim because medical malpractice standing alone is not a constitutional violation. <u>Estelle</u>, 429 U.S. at 106. "Indeed, prison authorities are accorded considerable latitude in the diagnosis and treatment of prisoners." <u>Durmer</u>, 991 F.2d at 67 (citations omitted). Furthermore, in a prison medical context, deliberate indifference is generally not found when some significant level of medical care has been offered to the inmate. <u>Clark v. Doe</u>, 2000 U.S. Dist. LEXIS 14999, 2000 WL 1522855, at *2 (E.D.Pa. Oct. 13, 2000)("courts have consistently rejected Eighth

Amendment claims where an inmate has received some level of medical care"). Thus, such complaints fail as constitutional claims under § 1983 since "the exercise by a doctor of his professional judgment is never deliberate indifference. See e.g., Brown v. Borough of Chambersburg, 903 F.2d 274, 278 (3d Cir.1990) ('[A]s long as a physician exercises professional judgment his behavior will not violate a prisoner's constitutional rights.')". Gindraw v. Dendler, 967 F.Supp. 833, 836 (E.D. Pa. 1997).

Applying this exacting standard, courts have frequently rejected Eighth Amendment claims that are based upon the level of professional care that an inmate received; see, e.g., Ham v. Greer, 269 F. App'x 149 (3d Cir. 2008); James v. Dep't of Corrections, 230 F. App'x 195 (3d. Cir. 2007); Gillespie v. Hogan, 182 F. App'x 103 (3d Cir. 2006); Bronson v. White, No. 05-2150, 2007 WL 3033865 (M.D. Pa. Oct. 15, 2007); Gindraw v. Dendler, 967 F.Supp. 833 (E.D. Pa. 1997), particularly where it can be shown that significant medical services were provided to the inmate but the prisoner is dissatisfied with the outcome of these services. Instead, courts have defined the precise burden which an inmate must sustain in order to advance an Eighth Amendment claim against a healthcare professional premised on allegedly inadequate care, stating that:

> The district court [may] properly dis[miss an] Eighth Amendment claim, as it concerned [a care giver], because [the] allegations merely amounted

to a disagreement over the proper course of his treatment and thus failed to allege a reckless disregard with respect to his . . . care. The standard for cruel and unusual punishment under the Eighth Amendment, established by the Supreme Court in <u>Estelle v. Gamble</u>, 429 U.S. 97, 104 (1976), and its progeny, has two prongs: 1) deliberate indifference by prison officials and 2) serious medical needs. "It is well-settled that claims of negligence or medical malpractice, without some more culpable state of mind, do not constitute 'deliberate indifference.' " "Nor does mere disagreement as to the proper medical treatment support a claim of an eighth amendment violation." . . . . [The inmate] alleged no undue delay in receiving treatment and, as the district court noted, the evidence he presented established that he received timely care . . . . Although [an inmate plaintiff] may have preferred a different course of treatment, [t]his preference alone cannot establish deliberate indifference as such second-guessing is not the province of the courts.

<u>James</u>, 230 F.App'x. at 197-198.(citations omitted).

Furthermore, it is well-settled that an inmate's dissatisfaction with a course of medical treatment, standing alone, does not give rise to a viable Eighth Amendment claim. <u>See</u> <u>Taylor v. Norris</u>, 36 Fed. Appx. 228, 229 (8th Cir. 2002) (deliberate indifference claim failed when it boiled down to a disagreement over recommended treatment for hernias and decision not to schedule a doctor's appointment); <u>Abdul-Wadood v. Nathan</u>, 91 F.3d 1023, 1024-35 (7th Cir.1996) (inmate's disagreement with selection of medicine and therapy for sickle cell anemia falls well short of demonstrating deliberate indifference); <u>Sherrer v. Stephen</u>, 50 F.3d 496, 497 (8th Cir.1994) (inmate's "desire for a replacement joint instead of fusion surgery is merely

14

a disagreement with the course of medical treatment and does not state a constitutional claim"); Kayser v. Caspari, 16 F.3d 280, 281 (8th Cir.1994) (prison provided escalating level of treatment for inmates's ailments over time, and inmate's disagreement with course of medical treatment was insufficient basis for Eighth Amendment violation); Czajka v. Caspari, 995 F.2d 870, 871 (8th Cir.1993) (inmate's mere disagreement with doctor's informed decision to delay surgery does not establish Eighth Amendment claim); Smith v. Marcantonio, 910 F.2d 500, 502 (8th Cir.1990) (inmate failed to prove deliberate indifference where his complaints represented nothing more than mere disagreement with course of his medical treatment); Lair v. Oglesby, 859 F.2d 605, 606 (8th Cir.1988) (disagreement about whether doctor should have prescribed medication does not result in constitutional violation); Martin v. Sargent, 780 F.2d 1334, 1339 (8th Cir.1985) (Inmate failed to state facts indicating doctor deliberately disregarded his medical problem; inmate's disagreement as to proper medical treatment does not give rise to Eighth Amendment violation). Therefore, where a dispute in essence entails nothing more than a disagreement between an inmate and doctors over alternate treatment plans, the inmate's complaint will fail as a constitutional claim under § 1983; see e.g., Gause v. Diguglielmo, 339 F. App'x 132 (3d Cir. 2009)(dispute over choice of medication does not rise to the level of an Eighth Amendment violation); Innis v. Wilson, 334 F. App'x 454 (3d Cir.

2009)(same); <u>Rozzelle v. Rossi</u>, 307 F. App'x 640 (3d Cir. 2008)(same); <u>Whooten v. Bussanich</u>, 248 F. App'x 324 (3d Cir. 2007)(same); <u>Ascenzi v. Diaz</u>, 247 F. App'x 390 (3d Cir. 2007)(same), since "the exercise by a doctor of his professional judgment is never deliberate indifference." <u>Gindraw v. Dendler</u>, 967 F.Supp. 833, 836 (E.D. Pa. 1997)(citations omitted).  In short, in the context of the Eighth Amendment, any attempt to second-guess the propriety or adequacy of a particular course of treatment is disavowed by courts since such determinations remain a question of sound professional medical judgment.  <u>Inmates of Allegheny County Jail v. Pierce</u>, 612 F.2d 754, 762 (3d Cir. 1979) (quoting <u>Bowring v. Godwin</u>, 551 F.2d 44, 48 (4th Cir. 1977)).

C. **Except for Those Claims Relating to Incidents Occurring in September 2011, At This Time Disputed Factual Issues Preclude The Court from Reaching a Judgment as a Matter of Law Regarding Whether Ball Failed to Properly Exhaust Her Administrative Remedies**

Moreover, in this case, the defendants also assert a procedural hurdle to Ball maintaining this action, urging the Court to dismiss the plaintiff's claims because Ball has failed to timely exhaust the administrative remedies available to her.  Ball, in turn, has countered this defense claim by asserting that corrections officials frustrated her efforts to exhaust these claims in a timely fashion by placing her on a grievance

restriction.  However, with respect to this issue, Ball's pleadings are confused and contradictory, with Ball stating:  "I believe I exhausted all these claims.  If not, I was on grievance restriction or my mail was held. . . .They refused to send my mail and they made me miss the deadlines around 5/3/11 and did not give me the mail with grievances back till around 5-6-11." (Id.)

This dispute, which comes before the Court on an incomplete factual record, may be critically important because Ball's alleged failure to timely pursue these administrative remedies can have substantive significance for the plaintiff since the Prison Litigation Reform Act provides that "[n]o action shall be brought with respect to prison conditions under . . . [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a). Section 1997e's exhaustion requirement applies to a wide-range of inmate complaints, including damages complaints like those made by Jones grounded in alleged violations of the Eighth Amendment.  See Spruill v. Gillis, 372 F.3d 218 (3d. Cir. 2004); Booth v. Churner, 206 F.3d 289 (3d Cir. 2000).  While this exhaustion requirement is not a jurisdictional bar to litigation, this requirement is strictly enforced by the courts.  This rigorous enforcement is mandated by a fundamental

recognition that § 1997e's exhaustion requirement promotes important public policies. As the United States Court of Appeals for the Third Circuit has noted:

> Courts have recognized myriad policy considerations in favor of exhaustion requirements. They include (1) avoiding premature interruption of the administrative process and giving the agency a chance to discover and correct its own errors; (2) conserving scarce judicial resources, since the complaining party may be successful in vindicating his rights in the administrative process and the courts may never have to intervene; and (3) improving the efficacy of the administrative process. Each of these policies, which Congress seems to have had in mind in enacting the PLRA, is advanced by the across-the-board, mandatory exhaustion requirement in § 1997e(a). ... [A] a comprehensive exhaustion requirement better serves the policy of granting an agency the "opportunity to correct its own mistakes with respect to the programs it administers before it is haled into federal court." Moreover, "even if the complaining prisoner seeks only money damages, the prisoner may be successful in having the [prison] halt the infringing practice" or fashion some other remedy, such as returning personal property, reforming personal property policies, firing an abusive prison guard, or creating a better screening process for hiring such guards. And when a prisoner obtains some measure of affirmative relief, he may elect not to pursue his claim for damages. In either case, local actors are given the chance to address local problems, and at the very least, the time frame for the prisoner's damages is frozen or the isolated acts of abuse are prevented from recurring. An across-the-board exhaustion requirement also promotes judicial efficiency. . . . In cases in which inmate-plaintiffs exhaust their remedies in the administrative process and continue to pursue their claims in federal court, there is still much to be gained. The administrative process can serve to create a record for subsequent proceedings, it can be used to help focus and clarify poorly pled or confusing claims, and it forces the prison to justify or explain its internal procedures. All of these functions help courts navigate the sea of prisoner litigation in a manner that affords a fair hearing to all claims.

Nyhuis v. Reno, 204 F.3d 65, 75-76 (3d Cir. 2000)(citations omitted).

Because of the important policies fostered by this exhaustion requirement, it has been held that there is no futility exception to § 1997e's exhaustion requirement. Id. Instead, courts have typically required across-the-board administrative exhaustion by inmate plaintiffs who seek to pursue claims in federal court. Moreover, courts have also imposed a procedural default component on this exhaustion requirement, holding that inmates must fully satisfy the administrative requirements of the inmate grievance process before proceeding into federal court. Spruill v. Gillis, 372 F.3d 218 (3d Cir. 2004). Applying this procedural default standard to § 1997e's exhaustion requirement, courts have concluded that inmates who fail to fully, or timely, complete the prison grievance process are barred from subsequently litigating claims in federal court. See, e.g., Booth v. Churner, 206 F.3d 289 (3d Cir. 2000); Bolla v. Strickland, 304 F. App'x. 22 (3d Cir. 2008); Jetter v. Beard, 183 F. App'x. 178 (3d Cir. 2006). This requirement of strict adherence to the timetables prescribed by prison grievance policies is compelled by the important policies underlying the PLRA. As the Supreme Court has noted: "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." Woodford v. Ngo, 548 U.S. 81, 90-91 (2006).

This broad rule admits of one, narrowly defined exception.  If the actions of prison officials directly caused, or contributed to, the inmate's procedural default on a grievance, the inmate will not be held to strict compliance with this exhaustion requirement.  See Camp  v. Brennan, 219 F.3d 279 (3d. Cir. 2000).  However, case law recognizes a clear "reluctance to invoke equitable reasons to excuse [an inmate's] failure to exhaust as the statute requires." Davis v. Warman, 49 F. App'x 365, 368 (3d Cir. 2002).  Thus, an inmate's failure to exhaust will only be excused "under certain limited circumstances," Harris v. Armstrong, 149 F. App'x 58, 59 (3d Cir. 2005), and an inmate can defeat a claim of failure to exhaust only by showing "he was misled or that there was some extraordinary reason he was prevented from complying with the statutory mandate." Davis v. Warman, supra,  49 F. App'x at 368. See also, Brown v. Croak, 312 F.3d 109, 110 (3d Cir. 2002) (assuming that prisoner with failure to protect claim is entitled to rely on instruction by prison officials to wait for outcome of internal security investigation before filing grievance); Camp v. Brennan, 219 F.3d 279, 281 (3d Cir.2000) (exhaustion requirement met where Office of Professional Responsibility fully examined merits of excessive force claim and uncontradicted correctional officers impeded filing of grievance).

In the absence of competent proof that an inmate was misled by corrections officials, was impeded in filing a timely grievance, or some other extraordinary

circumstances intervened and prevented compliance with the grievance process, inmate requests to excuse a failure to exhaust are frequently rebuffed by the courts. Thus, an inmate cannot excuse a failure to timely comply with these grievance procedures by simply claiming that his efforts constituted "substantial compliance" with this statutory exhaustion requirement. Harris v. Armstrong, 149 F.App'x 58, 59 (3d Cir. 2005). Nor can an inmate avoid this exhaustion requirement by merely alleging that the Department of Corrections policies were not clearly explained to him. Davis v. Warman, 49 F. App'x 365, 368 (3d Cir. 2002). Thus, an inmate's confusion regarding these grievances procedures does not, standing alone, excuse a failure to exhaust. Casey v. Smith, 71 F. App'x 916 (3d Cir. 2003). Moreover, an inmate cannot cite to alleged staff impediments to grieving a matter as grounds for excusing a failure to exhaust, if it also appears that the prisoner did not pursue a proper grievance once those impediments were removed. Oliver v. Moore, 145 F. App'x 731 (3d Cir. 2005)(failure to exhaust not excused if, after staff allegedly ceased efforts to impede grievance, prisoner failed to follow through on grievance).

In this case, Ball alleges that she either exhausted her grievances, or was on a grievance restriction which prevented her from timely exhausting her administrative remedies. However, Ball's pleadings recite that she was only subject to a grievance restriction in May of 2011. The defendants, in turn, have provided the Court with

nothing detailing Ball's grievance history, or identifying when Ball may have been subject to grievance restrictions.  On this incomplete factual record, at this time there are unresolved, threshold factual questions which prevent us from reaching any final conclusions regarding whether this exhaustion requirement has been satisfied, or should be excused, with respect to all of Ball's claims which pre-date August 2011.  As to these claims, Ball's assertion that she completed the grievance process, coupled with her claim that she was on a grievance restriction in May of 2011, if true, could excuse her delay in exhausting his administrative remedies.  See, e.g., Brown v. Croak, 312 F.3d 109, 110 (3d Cir. 2002) (assuming that prisoner with failure to protect claim is entitled to rely on instruction by prison officials to wait for outcome of internal security investigation before filing grievance);  Camp v. Brennan, 219 F.3d 279, 281 (3d Cir. 2000) (exhaustion requirement met where Office of Professional Responsibility fully examined merits of excessive force claim and uncontradicted correctional officers impeded filing of grievance).  At a minimum, these unresolved questions create a factual dispute which precludes dismissal of these claims at this time.  Indeed, where there are factual questions concerning the extent to which an inmate's efforts to exhaust his grievances were impeded or delayed by the actions of  prison officials, judgment in favor of the defendants clearly is not appropriate.  See, e.g., Knauss v. Shannon, No. 08-1698, 2010 WL 569829 (M.D. Pa.

22

Feb. 12, 2010); Born v. Monmouth County Correctional Institution, No. 07-3771, 2008 WL 4056313 (D.N.J. Aug. 28, 2008).

Thus, at present, disputed issues of material fact prevent us from reaching any final conclusions on the question of whether Ball timely exhausted her administrative remedies with respect to claims which pre-date August 2011. Therefore, it is recommended that this motion to dismiss be denied as to these claims without prejudice to the renewal of this defense on a more complete factual record.

However, with respect to the claims that Ball makes relating to conduct occurring in September of 2011, dismissal of these claims on exhaustion grounds is appropriate. Ball's pleadings do not assert that she was subject to any grievance restriction in September 2011, and the defendants aptly note that the timing of her claims makes it impossible for Ball to have exhausted her administrative remedies with respect to these particular matters.

This legal impossibility stems from the fact that the administrative procedure that state inmates must use to prosecute grievances is provided for in Department of Corrections Administrative Directive 804 (Doc. 48, Ex. B, "DC-ADM 804"). The grievance system is comprised of three tiers. Pursuant to DC-ADM 804, the first step in the inmate grievance process, except for those expressly governed by other procedures, is an initial review. At this stage, an inmate must submit a grievance

within 15 working days of the event on which the grievance is based.  (Id.)  An inmate who is dissatisfied with the initial decision may appeal to the Facility Manager within 10 working days from the date of the initial review decision.  (Id.)  At a state correctional institution, the Facility Manager is the institution's Superintendent.  If an inmate is not satisfied with the result of the Facility Manager's review of his appeal, he may appeal to final review with the Secretary's Office of Inmate Grievances and Appeals by filing an appeal with that office within 15 working days of the date of the Facility Manager's decision.  Extensions to these deadlines could be granted at the discretion of the agency if the inmate submitted a written explanation for a failure to timely file the grievance or an appeal. (DC-ADM 804 (VI)(B)(3), (VI)(C)(2)(a), (VI)(D)(1)(c).)  Since this process requires more than 30 days to complete, it is impossible for Ball to have fully exhausted these grievances as to matters occurring in September 2011 prior to the filing of her civil complaint on October 4, 2011.  Since "[p]roper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings," Woodford v. Ngo, 548 U.S. 81, 90-91 (2006), Ball's failure to complete the grievance process as to these September 2011 claims requires their dismissal from this action at this time.

**D.**   **Many of Ball's Remaining Claims Fail On Their Merits**

**1.**   **Ball May Not Bring a Private Cause of Action Against Defendant D'Addio Under HIPAA**

In addition to this procedural obstacle, many of Ball's remaining claims fail on their merits.  For example, in her complaint Ball alleges that a prison psychologist, defendant D'Addio, gave her medical records to a state hospital without her permission, and "told my private business to corrections officers."  According to Ball this "private business" involved the fact that Ball "was going to have a pysch evaluation done for the court."   Thus, liberally construed, Ball appears to be advancing a novel claim to a private right of action under the Health Insurance Portability and Accountability Act of 1996 (HIPAA), 42 U.S.C. §201, alleging that defendant D'Addio violated this health care statute by publicly disclosing health information.

This novel claim warrants only brief consideration.  The courts that have examined HIPAA have generally concluded "that HIPAA does not create such a private right [of action for individual plaintiffs].  See Rigaud v. Garofalo, 2005 WL 1030196 (E.D.Pa. 2005); Dominic J. v. Wyoming Valley West High School, 362 F.Supp.2d 560 (M.D.Pa.2005); O'Donnell v. Blue Cross Blue Shield of Wyoming, 173 F.Supp.2d 1176 (D.C.Wyo.2001); Brock v. Provident Am. Ins. Co., 144

F.Supp.2d 652 (N.D.Tex.2001); Means v. Indep. Life and Accident Insurance Co.,

963 F.Supp. 1131 (M.D.Ala.1997); Wright v. Combined Insurance Co. of America,

959 F.Supp. 356 (N.D.Miss.1997)." Carney v. Snyder, No. 06-23,  2006 WL

2372007, *4 (W.D.Pa Aug. 15, 2006).  Therefore, Ball simply may not maintain a

private HIPAA claim against this defendant arising out of the disclosure of  her

"private business."

> **2.      Many of Ball's Eighth Amendment Medical Care Claims Also Fail**

In addition, many of the discrete Eighth Amendment medical care claims

advanced by Ball simply fail as a matter of law. As we have noted, in this setting:

> The standard for cruel and unusual punishment under the Eighth
> Amendment, established by the Supreme Court in Estelle v. Gamble,
> 429 U.S. 97, 104 (1976), and its progeny, has two prongs: 1) deliberate
> indifference by prison officials and 2) serious medical needs. "It is well-
> settled that claims of negligence or medical malpractice, without some
> more culpable state of mind, do not constitute 'deliberate indifference.'
> "  "Nor does mere disagreement as to the proper medical treatment
> support a claim of an eighth amendment violation." . . . .Although [an
> inmate plaintiff] may have preferred a different course of treatment,
> [t]his preference alone cannot establish deliberate indifference as such
> second-guessing is not the province of the courts.

James, 230 F. App'x at 197-198.(citations omitted).

Judged against this standard we find, at the outset, that Ball's complaint that in October of 2011 that defendant, Dawn Werner, had not ordered new glasses for the plaintiff, to replace a pair of glasses broken in September 2011, simply does not rise to the level of deliberate indifference to a serious medical need, especially since Ball's allegations do not describe any prolonged denial of eye glasses.

Similarly, without further well-pleaded facts, Ball's claim against Dr. Famiglio that involves the doctor providing some extra degree of medical care to Ball, in the form of offering Ball skin lotion, and other medicines, if she refrains from signing up for sick calls, does not describe deliberate indifference to a serious medical condition. Quite the contrary, despite Ball's efforts to describe this conduct as a "bribe," it appears that the doctor is providing additional, and alternative, care to Ball, a matter of medical discretion which cannot be fairly characterized as deliberate indifference to her needs.  While Ball may prefer sick call visits to receipt of this medication, this disagreement between an inmate and doctors over alternate treatment plans does not state a constitutional claim under § 1983.  See, Gause v. Diguglielmo, 339 F. App'x 132 (3d Cir. 2009)(dispute over choice of medication does not rise to the level of an Eighth Amendment violation).

Similarly, Ball's complaint that Dr. Gothwal, and Dr. Famiglio declined to see her on three occasions in April 2011 and twice in May 2011, does not state a claim

since Ball does not indicate what, if any, medical problems she was experiencing at the time that these physicians declined to see her on these specific dates.  In the absence of further well-stated facts this assertion, standing alone, simply does not show deliberate indifference to a serious medical need.  At most, it displays a disagreement between an inmate and a doctor concerning the level of care needed by the prisoner, a matter which does not state a constitutional claim under § 1983. See, Gause v. Diguglielmo, supra.

Further, Ball's concern that pap smear test results may reveal abnormalities, but that four defendants–Dr. Famiglio, Dr. Gothwal, Judy Rowe, and Gloria Duggan–"say the results are fine and they are not," does not state an Eighth Amendment claim.  The fact that Ball does not believe medical staff when they tell her she is fine simply does not amount to deliberate indifference to her serious medical needs.

Finally, Ball's allegations that two corrections staff, Judy Rowe and Gloria Duggan, "made derogatory and slanderous statements against me on their grievance responses.  They said I put my fingers in feces and smear it on [medical] requests which is not true," does not state an actionable constitutional claim.  In this regard, Ball seems to invite this Court to address a matter which she acknowledges has been the subject of on-going prison grievance proceedings; namely, the question of whether she smears her own feces on documents given to medical staff.  We will

decline this invitation because Ball's complaint indicates that these statements were allegedly made in grievance responses that are part of on-going prison grievance proceedings.  In this setting the fact that Ball can pursue these claims in her grievance proceedings addresses any concerns she may have since: "[F]iling false . . . charges [against an inmate] does not itself violate a prisoner's constitutional rights, so long as procedural due process protections were provided. See e.g., Freeman v. Rideout, 808 F.2d 949, 952-53 (2d Cir.1986) (the filing of false charges does not constitute a claim under § 1983 so long as the inmate was granted a hearing and an opportunity to rebut the charges); Hanrahan v. Lane, 747 F.2d 1137, 1140 (7th Cir.1984)." Richardson v. Sherrer, 344 F. App'x 755, 757-758 (3d Cir. 2007). See also Booth v. Pence, 141 F. App'x 66 (3d Cir. 2005); Smith v. Mensinger, 293 F.3d 641, 653-54 (3d Cir. 2002).

### 3.    Ball's Claim That She Has Been Denied Eye Care For Two Years Is Not Subject to Dismissal

While we conclude that many of Ball's claims fail on substantive and procedural grounds, we find that one assertion made by Ball in this complaint is not subject to dismissal for failure to state a claim upon which relief may be granted.  Ball alleges that four defendants–Lieutenants Hummel, Neese, Barto and Dr. Famiglio–have refused and canceled eye appointment for two years.  According to Ball, as a result of this failure to treat her vision "I'm losing my vision." (Doc. 1)

This assertion, if proven, would support an Eighth Amendment claim. Therefore, the defendants' motion to dismiss this particular claim should be denied.

E.    **These Flawed Claims Should Be Dismissed Without Prejudice, and The Plaintiff's Claim for $5,000,000 in Damages Should be Stricken**

While this merits analysis calls for dismissal of many of the claims set forth in this action, we recommend that Ball be given another, final opportunity to further litigate these claims by endeavoring to promptly file a second amended complaint. We recommend this course mindful of the fact that in civil rights cases *pro se* plaintiffs often should be afforded an opportunity to amend a complaint before the complaint is dismissed in its entirety, see Fletcher-Hardee Corp. v. Pote Concrete Contractors, 482 F.3d 247, 253 (3d Cir. 2007), unless granting further leave to amend is not necessary in a case such as this where amendment would be futile or result in undue delay, Alston v. Parker, 363 F.3d 229, 235 (3d Cir. 2004). Accordingly, it is recommended that the Court provide the plaintiff with an opportunity to correct these deficiencies in the *pro se* complaint, by dismissing this deficient complaint at this time without prejudice to one final effort by the plaintiff to comply with the rules governing civil actions in federal court.

However, we note that the Court should also strike the claim for a specific sum of unliquidated damages, $5,000,000, from this *pro se* complaint. In this regard, Rule 12 (f) of the Federal Rules of Civil Procedure imposes a duty on the Court to

review pleadings and provides that the Court may upon its own initiative at any time order stricken from any pleading any immaterial matter. Fed. R. Civ. P. 12(f). Decisions regarding whether claims may be stricken from a complaint are properly presented to a United States Magistrate Judge for determination in the first instance. Singh v. Superintending School Committee of the City of Portland, 593 F. Supp. 1315 (D. Me. 1984).  In this case, Ball's claim for a specified amount of unliquidated damages violates Local Rule 8.1 which provides, in part, that:

> The demand for judgment required in any pleading in any civil action pursuant to Fed.R.Civ.P.8(a)(3) may set forth generally that the party claiming damages is entitled to monetary relief *but shall not claim any specific sum where unliquidated damages are involved.* The short plain statement of jurisdiction, required by Fed.R.Civ.P.8(a)(1), shall set forth any amounts needed to invoke the jurisdiction of the court but no other.

Local Rule 8.1 (emphasis added).

Since this prayer for relief violates Local Rule 8.1 by specifying a particular amount of unliquidated damages, that specific dollar claim will be stricken from the complaint without prejudice to the Plaintiff arguing in any subsequent trial or hearing on the merits for any appropriate amount of damages supported by the evidence

III.   **Recommendation**

Accordingly, for the foregoing reasons, IT IS RECOMMENDED that the defendant's motion to dismiss be GRANTED, in part, and DENIED, in part, as follows:

The following claims in the Plaintiff's complaint should be dismissed without prejudice to the plaintiff endeavoring to correct the defects cited in this report, provided that the plaintiff acts within 20 days of any dismissal order:

1.   All claims arising out of actions in September, 2011.

2.   All claims against defendant Dawn Werner.

3.   All claims involving the following matters:

    A.   Ball's claim against Dr. Famiglio that involves the doctor providing some extra degree of medical care to Ball, in the form of offering Ball skin lotion, and other medicines, if she refrains from signing up for sick calls.

    B.   Ball's claim that a prison psychologist, defendant D'Addio, gave her medical records to a state hospital without her permission, and "told my private business to corrections officers."

    C.   Ball's complaint that Dr. Gothwal, and Dr. Famiglio declined to see her on three occasions in April 2011 and twice in May 2011,

since Ball does not indicate what, if any, medical problems she was experiencing at the time that these physicians declined to see her on these specific dates.

D.    Ball's concern that pap smear test results may reveal abnormalities, but that four defendants–Dr. Famiglio, Dr. Gothwal, Judy Rowe, and Gloria Duggan–"say the results are fine and they are not," since the fact that Ball does not believe medical staff when they tell her she is fine simply does not amount to deliberate indifference to her serious medical needs.

E.    Ball's allegations that two corrections staff, Judy Rowe and Gloria Duggan, "made derogatory and slanderous statements against me on their grievance responses. They said I put my fingers in feces and smear it on [medical] requests which is not true."

F.    Ball's claim for a specific sum of unliquidated damages., $5,000,000.

The Parties are further placed on notice that pursuant to Local Rule 72.3:

Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen

(14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this 14th day of March 2012.

*S/Martin C.  Carlson*
Martin C. Carlson
United States Magistrate Judge