**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **DAWN BALL,** | : | **CIVIL NO. 1:11-CV-1834** |
| | : | |
| **Plaintiff,** | : | **(Chief Judge Kane)** |
| | : | |
| **v.** | : | **(Magistrate Judge Carlson)** |
| | : | |
| | : | |
| **DR. FAMIGLIO, et al.,** | : | |
| | : | |
| **Defendants.** | : | |

**REPORT AND RECOMMENDATION**

**I.    Statement of Facts and of the Case**

**A.    Introduction**

In many ways, Dawn Ball's current circumstances inspire both sorrow and concern.  The plaintiff, Dawn Ball, is an inmate housed in the Restricted Housing Unit at the State Correctional Institution (SCI) Muncy, who by her own account suffers from a cascading array of severe mental illnesses.

 Ball v. Beard, No. 1:09-CV-845, (Doc. 42,  pp. 6-7.)

Furthermore, Ball is also an inmate who has reported to the court that she engages in multiple episodes of destructive, self-defeating and senseless behavior. For example, recurring themes in Ball's lawsuits include Ball's penchant for smearing

feces on herself and her cell, her destruction of her own clothing, and her use of her clothing to plug her toilet and flood her cell with water and human waste.  Ball is also, by her own admission, an inmate with a propensity of sudden, explosive rages, as illustrated by the civil complaint which she has filed Ball v. Barr, No.1:11-CV-2240 (M.D.Pa.).  In this complaint, Ball describes an episode in which a discussion regarding the aesthetic qualities of a piece of cornbread escalated in a matter of moments into a profanity-laced wrestling match over a food tray.

While she suffers from paranoia, schizophrenia, and experiences these visual and auditory hallucinations, Ball is also a prodigious federal court litigant, bringing numerous lawsuits based upon her perception of the events that take place around her in prison.  Indeed, at present Ball has approximately twenty-five lawsuits lodged before this court.[1]

_____

[1]See, e.g., Ball v. SCI Muncy, No.1:08-CV-700 (M.D.Pa.); Ball v. SCI-Muncy, No. 1:08-CV-701 (M.D.Pa.); Ball v. Hill, No.1:09-CV-773 (M.D.Pa.); Ball v. Beard, No. 1:09-CV-845 (M.D.Pa.); Ball v. Lamas, No. 1:09-CV-846, (M.D. Pa.); Ball v. Oden , No 1:09-CV-847 (M.D.Pa.); Ball v. Bower, No. 1:10-CV-2561 (M.D.Pa.); Ball v. Sisley, No. 1:11-CV-877 (M.D.Pa.); Ball v. Struther, No. 1:11-CV-1265 (M.D.Pa.); Ball v. Hummel, No. 1:11-CV-1422 (M.D.Pa.); Ball v. Beckley, No. 1:11-CV-1829 (M.D.Pa.); Ball v. Sipe, No. 1:11-CV-1830 (M.D.Pa.); Ball v. Craver, No. 1:11-CV-1831 (M.D.Pa.); Ball v. Powley, No. 1:11-CV-1832 (M..D.Pa.); Ball v. Cooper, No. 1:11-CV-1833 (M.D.Pa.); Ball v. Famiglio, No. 1:11-CV-1834 (M.D.Pa.); Ball v. Eckroth, No. 1:11-CV-2238 (M.D.Pa.); Ball v. Campbell, No. 1:11-CV-2239 (M.D.Pa.); Ball v Barr, No. 1:11-CV-2240 (M.D.Pa.); Ball v Giroux, No. 1:12-CV-10 (M.D.Pa.); Ball v Giroux, No. 1:12-CV-11 (M.D.Pa.); Ball v Curham, No. 1:12-CV-12 (M.D.Pa.); Ball v.

Ball is also a prodigiously unsuccessful litigant, who has had at least three prior lawsuits dismissed either for failure to exhaust her administrative remedies, or as frivolous on the grounds that the lawsuit failed to state a claim upon which relief could be granted. The history of repeated, frivolous and meritless litigation in federal court by this plaintiff began in March of 2008, when Ball filed a complaint in the case of Ball v. SCI Muncy, No. 1:08-CV-391 (M.D. Pa.). On December 10, 2008, the district court dismissed this civil action for failure to exhaust her administrative remedies, Ball v. SCI Muncy, No. 1:08-CV-391 (M.D. Pa.) (Doc. 36.), and on July 22, 2010, the United States Court of Appeals for the Third Circuit affirmed the dismissal of this action. Ball v. SCI Muncy, No. 1:08-CV-391 (M.D. Pa.) (Doc. 44.)

On May 5, 2009, Ball filed a second civil action in the case of Ball v. Hartman, No. 1:09-CV-844 (M.D. Pa.). This action was dismissed by the district court, which found Ball's complaint to be frivolous, Ball v. Hartman, No. 1:09-CV-844 (M.D. Pa.) (Docs 32, 33, and 36.) and Ball's appeal of this dismissal order was summarily denied

---

Giroux, No. 1:12-CV-812 (M.D.Pa.); Ball v. Giroux, No. 1:12-CV-813 (M.D.Pa.); Ball v. Hummel, No. 1:12-CV-814 (M.D.Pa.); Ball v. D'Addio, No. 1:12-CV-815 (M.D.Pa.) .

by the court of appeals pursuant to 28 U.S.C. § 1915(e)(2)(B).[2]  Ball v. Hartman, No.

1:09-CV-844 (M.D. Pa.) (Doc. 48.)

Ball then filed yet another lawsuit in the case of Ball v. Butts, No. 1:11-CV-

1068, (M.D.Pa.) on June 3, 2011.  Ball v. Butts, No. 1:11-CV-1068 (M.D.Pa.)(Doc.

1.)  On June 15, 2011, upon a screening review of this complaint, the district court

dismissed this action for failure to state a claim upon which relief could be granted

Ball v. Butts, No. 1:11-CV-1068 (M.D.Pa.)(Doc. 8.)  Ball appealed this dismissal.

Ball v. Butts, No. 1:11-CV-1068 (M.D.Pa.)(Doc. 10.)  On September 21, 2011,  the

court of appeals entered an opinion and order dismissing Ball's appeal as frivolous

pursuant to 28 U.S.C. § 1915(e)(2)(B).  That appellate court opinion and order spoke

unambiguously regarding the frivolous nature of this particular lawsuit filed by Ball,

stating in clear and precise terms that:

> Because we too have granted Ball leave to proceed IFP, we must screen
> this appeal to determine whether it is frivolous.  See 28 U.S.C. §
> 1915(e)(2)(B)(I). An appeal is frivolous if it "lacks an arguable basis
> either in law or in fact." Neitzke v. Williams, 490 U.S. 319, 325 (1989).
> This appeal lacks any such basis.  As the District Court adequately

---

[2]28 U.S.C. § 1915(e)(2)(B)(I) provides that: "Notwithstanding any filing
fee, or any portion thereof, that may have been paid, the court shall dismiss the
case at any time if the court determines that . . . the action or appeal, . . . is
frivolous or malicious."  Thus the appellate court's October 29, 2010, ruling was
tantamount to a declaration that this action was also frivolous.

explained, immunity extends even to judicial acts that are "done maliciously," and Ball has alleged nothing suggesting that Judge Butts acted in the "clear absence of all jurisdiction." Gallas v. Supreme Court of Pa., 211 F.3d 760, 769 (3d Cir.2000) (citation and internal quotation marks omitted). To the extent that Ball's request for injunctive relief might not have been subject to dismissal under § 1915(e)(2)(B)(iii), it was subject to dismissal under § 1915(e)(2)(B)(ii) because such relief is not available against "a judicial officer for an act ... taken in such officer's judicial capacity" under these circumstances. 42 U.S.C. § 1983. Finally, we are satisfied that any amendment of Ball's complaint would be futile. See Grayson v. Mayview State Hosp., 293 F.3d 103, 111 (3d Cir.2002). Thus, we will dismiss this appeal.

Ball v. Butts, No. 11-2862,  2011 WL 4375782, 1 (3d Cir. Sept 21, 2011).

## B.   Ball's Current Lawsuit

It is against this backdrop that Ball instituted the current lawsuit.  In this *pro se* complaint, which Ball filed on October 4, 2011, the plaintiff initially named 11 defendants and recited a series of medical and scheduling complaints which she had against these prison staff.

At the outset, Ball alleged that four defendants–Lieutenants Hummel, Neese, Barto and Dr. Famiglio– refused and canceled eye appointments for her for two years. According to Ball, as a result of this failure to treat her eyes, "I'm losing my vision." (Doc. 1.) Ball further alleged that Lieutenant Hummel also refused her other medical appointments in March and April, 2011.  The nature of these medical appointments was not further described by Ball.

5

Ball's October 4, 2011, complaint then alleged that another defendant, Dawn Werner, had not ordered new glasses for the plaintiff, to replace a pair of glasses broken in September 2011.  Ball further complained that a prison psychologist, defendant D'Addio, gave her medical records to a state hospital without her permission, and "told my private business to corrections officers."  According to Ball this "private business" involved the fact that Ball "was going to have a psych evaluation done for the court."  (Id.)

Ball's October 4, 2011, complaint then leveled another allegation against Dr. Famiglio.  This allegation, ironically, seemed to involve the doctor providing some extra degree of medical care to Ball.  Specifically, Ball complained that the doctor offered her skin lotion, and other medicines, if she refrained from signing up for sick calls, conduct that Ball described as a "bribe." (Id.)

Ball further alleged that two corrections staff, Judy Rowe and Gloria Duggan, "made derogatory and slanderous statements against me on their grievance responses. They said I put my fingers in feces and smear it on [medical] requests which is not true."  (Id.)  Ball also contended that these medical scheduling staff, and another medical scheduler identified only as Jane Doe, improperly refused to handle her medical request forms because of their fear that Ball had smeared fecal material on the forms. (Id.)

6

In addition, Ball's complaint reflected that she has a concern that pap smear test results may reveal abnormalities, but that four defendants–Dr. Famiglio, Dr. Gothwal, Judy Rowe, and Gloria Duggan–"won't tell me the results or they say the results are fine and they are not." (Id.)  On the basis this bald assertion by Ball that she did not believe medical staff when they told her she was fine, the plaintiff sought to sue these individual defendants.  (Id.)  Further, Ball alleged that Dr. Gothwal, and Dr. Famiglio declined to see her on three occasions in April 2011 and twice in May 2011.  Ball did not indicate what, if any, medical problems she was experiencing at the time that these physicians declined to see her on these specific dates.  (Id.)

Ball's complaint then provided a confused and contradictory account of her efforts to exhaust her administrative remedies regarding these various medical complaints, stating: "I believe I exhausted all these claims.  If not, I was on grievance restriction or my mail was held. . . .They refused to send my mail and they made me miss the deadlines around 5/3/11 and did not give me the mail with grievances back till around 5-6-11." (Id.)

On the basis of these allegations, Ball sued each of the 11 named defendants, seeking injunctive and declaratory relief, as well as punitive and compensatory damages of $5,000,000 each.  (Id.)

7

The defendants filed a motion to dismiss Ball's complaint, (Doc. 51.), arguing that Ball had failed to exhaust her administrative remedies and had further failed to state claims upon which relief can be granted.  (Id.)  On March 14, 2012, we issued a report and recommendation, (Doc. 69.), which recommended that the following claims be dismissed:

1.      All claims arising out of actions in September 2011.

2.      All claims against defendant Dawn Werner.

3.      All claims involving the following matters:

      A.      Ball's claim against Dr. Famiglio that involves the doctor providing some extra degree of medical care to Ball, in the form of offering Ball skin lotion, and other medicines, if she refrains from signing up for sick calls.

      B.      Ball's claim that a prison psychologist, defendant D'Addio, gave her medical records to a state hospital without her permission, and "told my private business to corrections officers."

      C.      Ball's complaint that Dr. Gothwal, and Dr. Famiglio declined to see her on three occasions in April 2011 and twice in May 2011, since Ball does not indicate what, if any, medical problems she was experiencing at the time that these physicians declined to see her on these specific dates.

      D.      Ball's concern that pap smear test results may reveal abnormalities, but that four defendants–Dr. Famiglio, Dr. Gothwal, Judy Rowe, and Gloria Duggan–"say the results are fine and they are not," since the fact that Ball does not believe medical staff when they tell her she is fine simply does not amount to deliberate indifference to her serious medical needs.

     E.    Ball's allegations that two corrections staff, Judy Rowe and Gloria Duggan, "made derogatory and slanderous statements against me on their grievance responses. They said I put my fingers in feces and smear it on [medical] requests which is not true."

(Id.)

We concluded, however, that Ball's claim that four defendants–Lieutenants Hummel, Neese, Barto and Dr. Famiglio– refused and canceled eye appointment for two years, causing Ball to allegedly lose her vision, made allegations which, if proven, could support an Eighth Amendment claim.  (Id.)  Therefore, we recommended that this claim not be dismissed at the outset of this litigation.  In addition, we recommended that the deficient allegations and claims which we had identified should be dismissed without prejudice to providing Ball one final opportunity to attempt to cure the defects in her pleadings noted in this report and recommendation by filing a single, coherent amended complaint. (Id.)

On May 23, 2012, the district court adopted this report and recommendation, (Doc. 86.), and instructed Ball in clear and precise terms as follows:

**IT IS HEREBY ORDERED THAT** the Report and Recommendation (Doc. No. 69.) is **ADOPTED** and the Medical Defendants' motion to dismiss (Doc. No. 51.) is **GRANTED IN PART** and the following claims are dismissed *without prejudice to Plaintiff's right to correct the defects cited in the Report and Recommendation within twenty days of the date of this order:*

1. All claims arising out of conduct in September 2011;

2. All claims against Dawn Werner;

3. All claims for a specific sum of unliquidated damages in the amount of $5,000,000;

4. All claims related to allegations that:

A. Defendant Famiglio provided some extra degree of medical care to Ball, in the form of offering Ball skin lotion, and other medicines, if she refrained from signing up for sick calls;

B. Defendant D'Addio, gave Plaintiff's medical records to a state hospital without her permission, and "told my private business to corrections officers;"

C. Defendants Gothwal and Famiglio declined to see Plaintiff on three occasions in April 2011 and twice in May 2011 since Plaintiff does not indicate what, if any, medical problems she was experiencing at the time that these physicians declined to see her on these specific dates;

D. Defendants Famiglio, Gothwal, Rowe, and Duggan told Plaintiff that the results of her pap smear were "fine" even though Plaintiff did not believe them;

E. Defendants Rowe and Duggan "made derogatory and slanderous statements against me on their grievance responses. They said I put my fingers in feces and smear it on [medical] requests which is not true."

(Doc. 86.)(emphasis added.)

Ball has not complied with this twenty-day deadline in which to file an amended complaint. Instead, on May 15, 2012, Ball sought to stay all of her multi-faceted federal court litigation, in an apparent effort to delay or avoid rulings in these

cases on many ripe defense motions.  (Doc. 84.)  On May 15, 2012, we denied this

request made by Ball, noting that there was something profoundly inconsistent in

these pleadings, since Ball's motions began with factual averments which detailed a

series of allegedly improper actions by prison officials, allegations which if true

required immediate attention by the courts.  (Doc. 85.)  Yet, while Ball recited facts

which cried out for action by the courts, she sought relief which would not be in her

interests, or in the interests of justice, a complete cessation of this litigation.  (Id.)

Because we believed that we owed it to Ball, and to all of the many defendants she

has sued, to promptly address the merits of her claims, on May 15, 2012, we denied

Ball's first motions to generally stay all of Ball's litigation to some future date of her

choosing.  Instead, we instructed Ball in clear and precise terms as follows:

> In the meanwhile Ball is directed to continue to comply with the filing
> deadlines previously set by this court and  IT IS ORDERED that any
> future requests for continuance or stay must be made individually by
> Ball in each of her cases along with factual averments specific to each
> particular case explaining why a stay or continuance is necessary.

(Id.)

Presented with this clear instruction from the court, Ball then chose to ignore

this guidance and filed another global stay request in all of her cases.  (Doc. 88.)

Indeed, in this second stay motion Ball endeavored not only to ignore the court's

prior order, but to try to ignore the court altogether by instructing the clerk's office

to present these latest stay motions to another judge.  (Id.)  Furthermore, Ball's motion sought more than a stay of future litigation, she also demanded that all orders in all of her cases entered since April, 2012, be "revoked."  (Id.)  We denied this second stay motion as well, (Doc. 90.), and Ball allowed her filing deadline for submission of an amended complaint to lapse without any action on her part to cure these serious defects in her pleadings.  Thus, we are currently presented with a deeply flawed complaint submitted by a plaintiff who refuses to correct this pleading and has ignored court-ordered deadlines.

On these facts, it is recommended that the complaint now be dismissed with prejudice.

## II.  **Discussion**

In this case, we have conducted a careful merits analysis of Ball's complaint which led to the conclusion that many of Ball's claims failed as a matter of law. Therefore, we recommended dismissal of those claims, a recommendation which was adopted by the district court.  While our screening analysis called for dismissal of these claims the court provided Ball another, final opportunity to further litigate this matter by endeavoring to promptly file a proper amended complaint.  Having concluded that portions of this *pro se* complaint were flawed in multiple and profound ways, we followed this course recognizing that in civil rights cases *pro se*

plaintiffs often should be afforded an opportunity to amend a complaint before the complaint is dismissed in its entirety, see Fletcher-Hardee Corp. v. Pote  Concrete Contractors, 482 F.3d 247, 253 (3d Cir. 2007), unless it is clear that granting further leave to amend would be futile, or result in undue delay.  Alston v. Parker, 363 F.3d 229, 235 (3d Cir. 2004).

Thus, in this case, Ball was given this opportunity to further amend her complaint, but has now forfeited this opportunity through her inaction.  In this situation, where wholly deficient claims in a complaint are dismissed without prejudice but the *pro se* plaintiff refuses to timely amend the complaint, it is well within the court's discretion to dismiss these claims with prejudice given the plaintiff's refusal to comply with court directives.  Indeed, the precise course was endorsed by the United States Court of Appeals for the Third Circuit in Pruden v. SCI Camp Hill, 252 F. App'x 436, 438 (3d Cir. 2007).  In Pruden, the appellate court addressed how district judges should exercise discretion when a *pro se* plaintiff ignores instructions to amend a complaint.  In terms that are equally applicable here the court observed that:

> The District Court dismissed the complaint without prejudice and allowed [the *pro se* plaintiff] twenty days in which to file an amended complaint. [The *pro se* plaintiff] failed to do so. Because [the *pro se* plaintiff] decided not to amend his complaint in accordance with the Federal Rules of Civil Procedure, we conclude that the District Court

did not abuse its discretion when it dismissed [the *pro se* plaintiff's] complaint with prejudice. See In re Westinghouse Securities Litigation, 90 F.3d 696, 704 (3d Cir.1996). The District Court expressly warned [the *pro se* plaintiff] that the failure to amend his complaint would result in dismissal of the action with prejudice. "[I]t is difficult to conceive of what other course the court could have followed." Id. (quoting Spain v. Gallegos, 26 F.3d 439, 455 (3d Cir.1994)).

Pruden v. SCI Camp Hill, 252 F. App'x 436, 438 (3d Cir. 2007).

Therefore, it is recommended that the deficient claims in this *pro se* complaint be dismissed as frivolous for failure to state a claim without further leave to amend.

### III.   Recommendation

Accordingly, for the foregoing reasons, IT IS RECOMMENDED that the following legally deficient claims in the plaintiff's complaint be dismissed as frivolous for failure to state a claim with prejudice:

1.   All claims arising out of actions in September 2011.

2.   All claims against defendant Dawn Werner.

3.   All claims involving the following matters:

   A.   Ball's claim against Dr. Famiglio that involves the doctor providing some extra degree of medical care to Ball, in the form of offering Ball skin lotion, and other medicines, if she refrains from signing up for sick calls.

B.   Ball's claim that a prison psychologist, defendant D'Addio, gave her medical records to a state hospital without her permission, and "told my private business to corrections officers."

C.   Ball's complaint that Dr. Gothwal, and Dr. Famiglio declined to see her on three occasions in April 2011 and twice in May 2011, since Ball does not indicate what, if any, medical problems she was experiencing at the time that these physicians declined to see her on these specific dates.

D.   Ball's concern that pap smear test results may reveal abnormalities, but that four defendants–Dr. Famiglio, Dr. Gothwal, Judy Rowe, and Gloria Duggan–"say the results are fine and they are not," since the fact that Ball does not believe medical staff when they tell her she is fine simply does not amount to deliberate indifference to her serious medical needs.

E.   Ball's allegations that two corrections staff, Judy Rowe and Gloria Duggan, "made derogatory and slanderous statements against me on their grievance responses. They said I put my fingers in feces and smear it on [medical] requests which is not true."

15

IT IS FURTHER RECOMMENDED that this case proceed forward only on Ball's claim that four defendants–Lieutenants Hummel, Neese, Barto and Dr. Famiglio–refused and canceled eye appointment for two years, causing Ball to allegedly lose her vision, allegations which, if proven, could support an Eighth Amendment claim.[3]

The Parties are further placed on notice that pursuant to Local Rule 72.3:

Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

---

[3]Of course, we do not opine regarding whether these claims may later be subject to dismissal on a more narrowly tailored and focused motion to dismiss or motion for summary judgment.

Submitted this 11th day of July 2012.

                                                    ***S/Martin C.  Carlson***
                                                    Martin C. Carlson
                                                    United States Magistrate Judge