**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **DAWN BALL,** | : | **CIVIL NO. 1:11-CV-1834** |
| | : | |
| **Plaintiff,** | : | **(Chief Judge Kane)** |
| | : | |
| **v.** | : | **(Magistrate Judge Carlson)** |
| | : | |
| | : | |
| **DR. FAMIGLIO, et al.,** | : | |
| | : | |
| **Defendants.** | : | |

**REPORT AND RECOMMENDATION**

I.     **Statement of Facts and of the Case**

A.     **Dawn Marie Ball's Litigation History**

This case, which comes before us for consideration of two motions for summary judgment, typifies that sad circumstances of Dawn Ball's life, a life which is now entirely marked by unreasoned anger and a cynical desire to use litigation as a vexatious vehicle to lash out at others.  Indeed, this case reminds us that in many ways Dawn Ball's current circumstances inspire both profound sorrow and concern.

Dawn Ball is an inmate housed in the Restricted Housing Unit at the State Correctional Institution (SCI) Muncy, who by her own account suffers from a cascading array of severe mental illnesses, and who has candidly acknowledged that

1

she is profoundly disturbed.  Ball v. Beard, No. 1:09-CV-845 (Doc. 42, pp.6-7.).

Furthermore, Ball is also an inmate who has reported to the court that she engages in

multiple episodes of destructive, self-defeating and senseless behavior.

Much of this institutional misconduct is marked by disturbing, excretory

behavior.  Indeed, a constant refrain throughout many of Ball's lawsuits is her

fascination with her own bodily wastes.  For example, recurring themes in Ball's

lawsuits include Ball's penchant for smearing feces on herself, her clothes, her

property, and her cell, as well as her destruction of her own clothing, and her use of

her clothing to plug her toilet and flood her cell with water and human waste.  Ball

is also, by her own admission, an inmate with a propensity for sudden, explosive

rages, as illustrated by the civil complaint which she has filed Ball v. Barr, No.1:11-

CV-2240 (M.D.Pa.).   In this complaint, Ball described an episode in which a

discussion regarding the aesthetic qualities of a piece of cornbread escalated in a

matter of moments into a profanity-laced wrestling match over a food tray.

Ball's bizarre and self-destructive behavior is also marked by repeated acts of

destruction of her own clothing.  As we have previously noted:

> One recurring theme in this array of lawsuits has been a disputatious
> cycle of conflict between Ball and her jailers.  As part of this cycle of
> behavior Ball has been cited for misconduct, oftentimes involving
> destruction or misuse of her prison garb, which has on occasion been
> found to have plugged the toilet in her cell, resulting in cell flooding.

2

> Prison officials have then placed Ball on clothing restrictions, and cited her for misconduct.  As result of these clothing restrictions, Ball has lost her entitlement to a prison jumpsuit.  Nonetheless when hearings have been scheduled on Ball's misconduct citations which often relate to the destruction or misuse of jumpsuits, she has demanded a jumpsuit before attending any hearing, or has insisted that the hearing be conducted at her cell.  Prison officials have then treated Ball's demands as tantamount to a refusal to appear, and have conducted the disciplinary hearing in her absence.  Ball, in turn, has sued prison staff, asserting that they have denied her due process.  This theme is a recurring refrain in Ball's litigation and is reflecting several lawsuits filed by Ball. . . . .

Ball v. Cooper, No. 1:11 CV 1833, 2012 WL 2389763, at *3 (M.D. Pa. June 1, 2012) report and recommendation adopted, No. 1:11-CV-1833, 2012 WL 2389760 (M.D. Pa. June 25, 2012).  See, e.g., Ball v. Oden, No. 1:09-CV-847, 2012 WL 7162069, at *1 (M.D. Pa. Dec. 6, 2012) report and recommendation adopted, No. 1:09-CV-847, 2013 WL 634024 (M.D. Pa. Feb. 20, 2013) Ball v. Sipe, No. 1:11-CV-1830, 2012 WL 2389759, at *3 (M.D. Pa. May 31, 2012) report and recommendation adopted, No. 1:11-CV-1830, 2012 WL 2389901 (M.D. Pa. June 25, 2012): Ball v. Hill, 1:09–CV–773, 2012 WL 4069748 (M.D.Pa. Aug.9, 2012) report and recommendation adopted, 1:09–CV–00773, 2012 WL 4069737 (M.D.Pa. Sept.17, 2012); Ball v. Famiglio, 1:11–CV–1834, 2012 WL 1886676 (M.D.Pa. Mar.14, 2012) report and recommendation adopted, 1:11–CV–1834, 2012 WL 1886673 (M.D.Pa. May 23, 2012); Ball v. Sisley, 1:11–CV–877, 2011 WL 7940267 (M.D.Pa. Dec.20,

2011) report and recommendation adopted, 1:11–CV–877, 2012 WL 1867276 (M.D.Pa. May 22, 2012).

Prior to revocation of her *in forma pauperis* privileges due to Ball's repeated abuse of those privileges, Ball was a prodigious federal court litigant, bringing numerous lawsuits based upon her perception of the events that take place around her in prison. Indeed, at various times Ball has had more than 25 lawsuits pending before this Court.[1] Sadly, though, Ball is also a prodigiously unsuccessful litigant, who has had numerous prior lawsuits dismissed either as frivolous, for failure to exhaust administrative remedies or on the grounds that the lawsuit failed to state a claim upon which relief could be granted. The history of repeated, frivolous and meritless

---

[1] See, e.g., Ball v. SCI Muncy, No.1:08-CV-700 (M.D.Pa.); Ball v. SCI-Muncy, No. 1:08-CV-701 (M.D.Pa.); Ball v. Hill, No.1:09-CV-773 (M.D.Pa.); Ball v. Beard, No. 1:09-CV-845 (M.D.Pa.); Ball v. Lamas, No. 1:09-CV-846, (M.D. Pa.); Ball v. Oden, No 1:09-CV-847 (M.D.Pa.); Ball v. Bower, No. 1:10-CV-2561 (M.D.Pa.); Ball v. Sisley, No. 1:11-CV-877 (M.D.Pa.); Ball v. Struther, No. 1:11-CV-1265 (M.D.Pa.); Ball v. Hummel, No. 1:11-CV-1422 (M.D.Pa.); Ball v. Beckley, No. 1:11-CV-1829 (M.D.Pa.); Ball v. Sipe, No. 1:11-CV-1830 (M.D.Pa.); Ball v. Craver, No. 1:11-CV-1831 (M.D.Pa.); Ball v. Powley, No. 1:11-CV-1832 (M..D.Pa.); Ball v. Cooper, No. 1:11-CV-1833 (M.D.Pa.); Ball v. Famiglio, No. 1:11-CV-1834 (M.D.Pa.); Ball v. Eckroth, No. 1:11-CV-2238 (M.D.Pa.); Ball v. Campbell, No. 1:11-CV-2239 (M.D.Pa.); Ball v Barr, No. 1:11-CV-2240 (M.D.Pa.); Ball v Giroux, No. 1:12-CV-10 (M.D.Pa.); Ball v Giroux, No. 1:12-CV-11 (M.D.Pa.); Ball v Curham, No. 1:12-CV-12 (M.D.Pa.); Ball v. Giroux, No. 1:12-CV-812 (M.D.Pa.); Ball v. Giroux, No. 1:12-CV-813 (M.D.Pa.); Ball v. Hummel, No. 1:12-CV-814 (M.D.Pa.); Ball v. D'Addio, No. 1:12-CV-815 (M.D.Pa.) .

litigation in federal court by this plaintiff has now led to court of appeals to conclude that Ball is barred as a frivolous filer under §1915(g)'s "three strikes" rule from proceeding *in forma pauperis* in federal court in the future. Ball v. Famiglio, 726 F.3d 448, 451 (3d Cir. 2013) cert. denied, 134 S. Ct. 1547, 188 L. Ed. 2d 565 (2014).

It is against this backdrop of angry, feckless litigation, lawsuits inspired by Ball's own sad, unreasoned and unreasoning self-destructive behavior in prison, that we now consider the remaining claims in the instant case.

## B.    Ball's Current Lawsuit

In this *pro se* complaint, which Ball initially filed on October 4, 2011, the plaintiff first named 11 defendants and recited a series of medical and scheduling complaints which she has against these prison staff.  As a result of on-going litigation over the past several years, a single claim against four defendants remains in this case.  Specifically, in this last claim Ball alleged that four defendants–Lieutenants, Hummel, Neese, Barto and Dr. Famiglio–have refused and canceled eye appointments for her for two years, from 2009 through 2011.  According to Ball, as a result of this failure to treat her eyes, "I'm losing my vision."  (Doc. 1.)

The remaining defendants have now moved for summary judgment on this Eighth Amendment deliberate indifference claim.  (Docs. 117 and 122.)  In support of these motions, the defendants have provided the Court with information gleaned

from Ball's extensive medicals records during the period encompassed by this lawsuit, 2009 through 2012. These records reveal that Ball received on-going care and treatment for vision issues throughout this time. The records further disclose that any missed appointments were a function of misconduct by Ball, or Ball's refusal to attend appointments. This misconduct, in turn, included the type of bizarre excretory misdeeds that are a penchant for this inmate, since in one instance a vision appointment for Ball had to be postponed due to Ball "fecal smearing all weekend." (Doc. 124, ¶14.) Finally, Ball's optimetric care history reveals numerous instances of suspected malingering by this inmate.

This medical and optimetric history is detailed below:

On June 29, 2009, Ball was seen by the in house eye doctor and it was determined that she did not require glasses. (Doc. 124, ¶7.). On July 13, 2009, Ball was scheduled for an eye appointment, but she refused to attend. (Id., ¶8.) One month later, on August 21, 2009, Ball was scheduled for an eye appointment which was cancelled due to Ball's reported poor behavior. (Id., ¶9.)

On November 3, 2009, Ball attended a scheduled eye appointment. Ball's eyes were examined and it was determined that she did not require glasses. (Id., ¶10.) On January 8, 2010, Ball was seen again by the Eye Center. While a retinal evaluation was recommended based upon her complaints, malingering was noted as a possibility.

(Id., ¶11.).  On March 1, 2010, Ball then refused to attend an appointment with the Eye Center.  (Id., ¶12.)

Three months later, on June 7, 2010, Ball was again seen by the Eye Center. Ball's records note that "she's got a completely normal dilated exam" and malingering was again identified as a possibility on Ball's part.  (Id., ¶13.)  On July 19, 2010, Ball's follow up eye appointment had to be rescheduled because she had been "fecal smearing all weekend."  (Id., ¶14.)  On September 7, 2010, Ball's eye appointment was then cancelled by Dr. Sanders for medical reasons because it was "not needed."  (Id., ¶15.)

Five months later, however, Ball received a biennial eye exam on February 16, 2011, and once again malingering was noted on her part.  (Id., ¶16.)  Dr. Fassero of the Eye Center evaluated Ball four months later, on June 24, 2011, due to her allegations of vision loss.  The records of this examination indicate that Dr. Fassero found "nothing wrong" but given the nature of Ball's claims, a follow up appointment was scheduled in three months.  Once again, the records indicated that malingering is a possibility.  (Id., ¶17.)  Dr. Fassero re-examined Ball again on September 29, 2011, for the three month follow up appointment.  At that time Ball reported that her eyes were the same and she was not using any drops.  Dr. Fassero noted that Ball easily moved around the room and was able to look at the guards, the technician, and

himself even looking at the pentacam on the computer screen as it was explained to her. At this visit Dr. Fassero opined that there was a malingering component to Ball's vision complaints. (Id., ¶18.)

On October 4, 2011, Ball refused to go to her eye doctor appointment. (Id., ¶19.) Dr. Fassero again examined Ball on December 8, 2011, due to her complaints of occasional squinting. There was no change from the previous examination. (Id., ¶20.) Dr. Fassero then saw Ball on January 24, 2012, and noted she could see better than she was claiming, prompting a discussion of malingering with her. He indicated that no further work-up was recommended. (Id., ¶21.)

It is against this medical backdrop marked by consistent eye care for Ball, and persistent malingering by Ball, that the defendants moved for summary judgment in January of 2015. (Docs. 117 and 122.) Ball did not timely respond to these motions, but instead sought an extension of time in which to respond, a request which we granted. (Doc. 131.)

In our order granting Ball this extension of time, we directed Ball to respond to these motions on or before May 6, 2015. This deadline has now passed without any action by Ball to respond to these dispositive motions, motions which thoroughly rebut her claims of deliberate indifference to her vision care. Accordingly, we will

deem these motions ripe for resolution, and recommend that the motions for summary judgment be granted.

## II.   **Discussion**

### A.   **Under The Rules of This Court This Motion to Dismiss Should Be Deemed Unopposed and Granted**

At the outset, under the Local Rules of this Court the plaintiff should be deemed to concur in this motion since the plaintiff has failed to timely oppose the motion, or otherwise litigate this case. This procedural default completely frustrates and impedes efforts to resolve this matter in a timely and fair fashion, and under the Rules of this Court warrants dismissal of the action, since Local Rule 7.6 of the Rules of this Court imposes an affirmative duty on the plaintiff to respond to motions and provides that:

> Any party opposing any motion, other than a motion for summary judgment, shall file a brief in opposition within fourteen (14) days after service of the movant's brief, or, if a brief in support of the motion is not required under these rules, within seven (7) days after service of the motion. *Any party who fails to comply with this rule shall be deemed not to oppose such motion.* Nothing in this rule shall be construed to limit the authority of the court to grant any motion before expiration of the prescribed period for filing a brief in opposition. A brief in opposition to a motion for summary judgment and LR 56.1 responsive statement, together with any transcripts, affidavits or other relevant documentation, shall be filed within twenty-one (21) days after service of the movant's brief.

Local Rule 7.6 (emphasis added).

It is now well-settled that "Local Rule 7.6 can be applied to grant a motion to dismiss without analysis of the complaint's sufficiency 'if a party fails to comply with the [R]ule after a specific direction to comply from the court.' Stackhouse v. Mazurkiewicz, 951 F.2d 29, 30 (1991)." Williams v. Lebanon Farms Disposal, Inc., No. 09-1704, 2010 WL 3703808, *1 (M.D. Pa. Aug.26, 2010). In this case the plaintiff has not complied with the Local Rules, or this Court's orders, by filing a timely response to this motion. Therefore, these procedural defaults by the plaintiff compel the Court to consider:

> [A] basic truth: we must remain mindful of the fact that "the Federal Rules are meant to be applied in such a way as to promote justice. *See* Fed.R.Civ.P. 1. Often that will mean that courts should strive to resolve cases on their merits whenever possible. However, justice also requires that the merits of a particular dispute be placed before the court in a timely fashion ...." McCurdy v. American Bd. of Plastic Surgery, 157 F.3d 191, 197 (3d Cir.1998).

Lease v. Fishel, 712 F. Supp. 2d 359, 371 (M.D.Pa. 2010).

With this basic truth in mind, we acknowledge a fundamental guiding tenet of our legal system. A failure on our part to enforce compliance with the rules, and impose the sanctions mandated by those rules when the rules are repeatedly breached, "would actually violate the dual mandate which guides this Court and motivates our system of justice: 'that courts should strive to resolve cases on their merits whenever possible [but that] justice also requires that the merits of a particular dispute be placed

10

before the court in a timely fashion'." <u>Id.</u>  Therefore, we are obliged to ensure that one party's refusal to comply with the rules does not lead to an unjustified prejudice to those parties who follow the rules.

These basic tenets of fairness apply here.  In this case, the plaintiff has failed to comply with Local Rule 7.6 by filing a timely response to the motion to dismiss. These failures now compel us to apply the sanction called for under Rule 7.6 and deem the plaintiff to not oppose these summary judgment motions.

### B.     Dismissal of this Case Is Also Warranted Under Rule 41

Beyond the requirements imposed by the Local Rules of this Court, Rule 41(b) of the Federal Rules of Civil Procedure authorizes a court to dismiss a civil action for failure to prosecute, stating that:  "If the plaintiff fails to prosecute or to comply with these rules or a court order, a defendant may move to dismiss the action or any claim against it." Fed. R. Civ. P. 41(b).  Decisions regarding dismissal of actions for failure to prosecute rest in the sound discretion of the court, and will not be disturbed absent an abuse of that discretion.  <u>Emerson v. Thiel College</u>, 296 F.3d 184, 190 (3d Cir. 2002)(citations omitted).  That discretion, however, while broad is governed by certain factors, commonly referred to as <u>Poulis</u> factors.  As the United States Court of Appeals for the Third Circuit has noted:

> To determine whether the District Court abused its discretion [in dismissing a case for failure to prosecute], we evaluate its balancing of the following factors:   (1) the extent of the party's personal responsibility; (2) the prejudice to the adversary caused by the failure to meet scheduling orders and respond to discovery; (3) a history of dilatoriness; (4) whether the conduct of the party or the attorney was willful or in bad faith; (5) the effectiveness of sanctions other than dismissal, which entails an analysis of alternative sanctions; and (6) the meritoriousness of the claim or defense.  Poulis v. State Farm Fire and Cas. Co., 747 F.2d 863, 868 (3d Cir.1984).

Emerson, 296 F.3d at 190.

In exercising this discretion "there is no 'magic formula' that we apply to determine whether a district court has abused its discretion in dismissing for failure to prosecute."  Lopez v. Cousins, 435 F. App'x 113, 116 (3d Cir. 2011)(quoting Briscoe v. Klem, 538 F.3d 252 (3d Cir. 2008))  Therefore, "[i]n balancing the Poulis factors, [courts] do not [employ] a . . . 'mechanical calculation' to determine whether a district court abused its discretion in dismissing a plaintiff's case.  Mindek v. Rigatti, 964 F.2d 1369, 1373 (3d Cir.1992)."  Briscoe v. Klaus,  538 F.3d at 263. Consistent with this view, it is well-settled that " 'no single Poulis factor is dispositive,' Ware, 322 F.3d at 222, [and it is] clear that 'not all of the Poulis factors need be satisfied in order to dismiss a complaint.'  Mindek, 964 F.2d at 1373." Briscoe v. Klaus, 538 F.3d at 263.  Moreover, recognizing the broad discretion conferred upon the district court in making judgments weighing these six factors, the

court of appeals has frequently sustained such dismissal orders where there has been a pattern of dilatory conduct by a *pro se* litigant who is not amenable to any lesser sanction.  See, e.g., Emerson v. Thiel College, supra; Tillio v. Mendelsohn, 256 F. App'x 509 (3d Cir. 2007); Reshard v. Lankenau Hospital, 256 F. App'x 506  (3d Cir. 2007); Azubuko v. Bell National Organization, 243 F. App'x 728 (3d Cir. 2007).

In this case, a dispassionate assessment of the Poulis factors weighs heavily in favor of dismissing this action.  At the outset, a consideration of the first Poulis factor, the extent of the party's personal responsibility, shows that the delays in this case are entirely attributable to the plaintiff, who has failed to abide by court orders, and has otherwise neglected to litigate this case, or respond to defense motions.

Similarly, the second Poulis factor– the prejudice to the adversary caused by the failure to abide by court orders–also calls for dismissal of this action.  Indeed, this factor–the prejudice suffered by the party seeking sanctions–is entitled to great weight and careful consideration.  As the United States Court of Appeals for the Third Circuit has observed:

> "Evidence of prejudice to an adversary would bear substantial weight in support of a dismissal or default judgment." Adams v. Trustees of N.J. Brewery Employees' Pension Trust Fund, 29 F.3d 863, 873-74 (3d Cir.1994) (internal quotation marks and citation omitted).  Generally, prejudice includes "the irretrievable loss of evidence, the inevitable dimming of witnesses' memories, or the excessive and possibly

irremediable burdens or costs imposed on the opposing party." Id. at 874 (internal quotation marks and citations omitted). . . . However, prejudice is not limited to "irremediable" or "irreparable" harm. Id.; see also Ware v. Rodale Press, Inc., 322 F.3d 218, 222 (3d Cir.2003); Curtis T. Bedwell & Sons, Inc. v. Int'l Fidelity Ins. Co., 843 F.2d 683, 693-94 (3d Cir.1988). It also includes "the burden imposed by impeding a party's ability to prepare effectively a full and complete trial strategy." Ware, 322 F.3d at 222.

Briscoe  v. Klaus, 538 F.3d at 259-60.

In this case the plaintiff's failure to litigate this claim or comply with court orders now wholly frustrates and delays the resolution of this action. In such instances, the defendants are plainly prejudiced by the plaintiff's continuing inaction and dismissal of the case clearly rests in the discretion of the trial judge. Tillio v. Mendelsohn, 256 F. App'x 509 (3d Cir. 2007) (failure to timely serve pleadings compels dismissal); Reshard v. Lankenau Hospital, 256 F. App'x 506 (3d Cir. 2007) (failure to comply with discovery compels dismissal); Azubuko v. Bell National Organization, 243 F. App'x 728 (3d Cir. 2007) (failure to file amended complaint prejudices defense and compels dismissal).

When one considers the third Poulis factor-the history of dilatoriness on the plaintiff's part–it becomes clear that dismissal of this action is now appropriate. In this regard, it is clear that "'[e]xtensive or repeated delay or delinquency constitutes a history of dilatoriness, such as consistent non-response . . . , or consistent tardiness

14

in complying with court orders.' Adams, 29 F.3d at 874." Briscoe v. Klaus, 538 F.3d at 260-61 (some citations omitted).  Here, the plaintiff has failed to respond to defense motions, has failed to timely file pleadings, and has not complied with orders of the Court.  Thus, the plaintiff's conduct displays "[e]xtensive or repeated delay or delinquency [and conduct which] constitutes a history of dilatoriness, such as consistent non-response . . . , or consistent tardiness in complying with court orders." Adams, 29 F.3d at 874.

The fourth Poulis factor–whether the conduct of the party or the attorney was willful or in bad faith–also cuts against the plaintiff in this case.  In this setting we must assess whether this conduct reflects mere inadvertence or willful conduct, in that it involved "strategic," "intentional or self-serving behavior," and not mere negligence.  Adams v. Trs. of N.J. Brewery Emps.' Pension Trust Fund, 29 F.3d 863, 875 (3d Cir.1994).  At this juncture, when the plaintiff has failed to comply with instructions of the Court directing the plaintiff to take specific actions in this case, and has violated the Local Rules, the Court is compelled to conclude that the plaintiff's actions are not accidental or inadvertent but instead reflect an intentional disregard for this case and the Court's instructions.

While Poulis also enjoins us to consider a fifth factor, the effectiveness of sanctions other than dismissal, cases construing Poulis agree that in a situation such as this case, where we are confronted by a *pro se* litigant who will not comply with the rules or court orders, lesser sanctions may not be an effective alternative. See, e.g., Briscoe v. Klaus, 538 F.3d 252, 262-63 (3d Cir. 2008); Emerson, 296 F.3d at 191. This case presents such a situation where the plaintiff's status as a *pro se* litigant severely limits the ability of the court to utilize other lesser sanctions to ensure that this litigation progresses in an orderly fashion. In any event, by entering our prior orders, and counseling the plaintiff on his obligations in this case, we have endeavored to use lesser sanctions, but to no avail. The plaintiff still declines to obey court orders, and otherwise ignores his responsibilities as a litigant. Since lesser sanctions have been tried, and have failed, only the sanction of dismissal remains available to the Court.

Finally, under Poulis we are cautioned to consider one other factor, the meritoriousness of the plaintiff's claims. In our view, however, consideration of this factor cannot save this particular plaintiff's claims, since the plaintiff is now wholly non-compliant with her obligations as a litigant. The plaintiff cannot refuse to address the merits of her claims, and then assert the untested merits of these claims as grounds for denying a motion to sanction her. Furthermore, it is well-settled that

16

" 'no single <u>Poulis</u> factor is dispositive,' <u>Ware</u>, 322 F.3d at 222, [and it is] clear that 'not all of the <u>Poulis</u> factors need be satisfied in order to dismiss a complaint.' <u>Mindek</u>, 964 F.2d at 1373." <u>Briscoe v. Klaus</u>, 538 F.3d at 263. Therefore, the untested merits of the non-compliant plaintiff's claims, standing alone, cannot prevent imposition of sanctions.

In any event, as discussed below, Ball's remaining claims plainly fail on their merits, yet another factor which favors dismissal of this action. The legal flaws inherent in these claims are discussed separately below.

### C.   <u>Ball's Claims Fail on Their Merits</u>

#### (1.)   <u>Rule 56–The Legal Standard</u>

The defendants have moved for judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure, which provides that the court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P., Rule 56. Through summary adjudication a court is empowered to dispose of those claims that do not present a "genuine dispute as to any material fact," Fed. R. Civ. P. 56(a), and for which a trial would be "an empty and unnecessary formality." <u>Univac Dental Co. v. Dentsply Int'l, Inc.</u>, No. 07-0493, 2010 U.S. Dist. LEXIS 31615, at *4 (M.D. Pa. Mar.

31, 2010).  The substantive law identifies which facts are material, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A dispute about a material fact is genuine only if there is a sufficient evidentiary basis that would allow a reasonable fact finder to return a verdict for the non-moving party.  Id. at 248-49.

The moving party has the initial burden of identifying evidence that it believes shows an absence of a genuine issue of material fact.  Conoshenti v. Pub. Serv. Elec. & Gas Co., 364 F.3d 135, 145-46 (3d Cir. 2004).  Once the moving party has shown that there is an absence of evidence to support the nonmoving party's claims, "the non-moving party must rebut the motion with facts in the record and cannot rest solely on assertions made in the pleadings, legal memoranda, or oral argument."  Berckeley Inv. Group. Ltd. v. Colkitt, 455 F.3d 195, 201 (3d Cir. 2006); accord Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986).  If the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden at trial," summary judgment is appropriate.  Celotex, 477 U.S. at 322.  Summary judgment is also appropriate if the non-moving party provides merely colorable, conclusory, or speculative evidence.  Anderson, 477 U.S. at 249.  There must be more than a scintilla of evidence

18

supporting the nonmoving party and more than some metaphysical doubt as to the material facts.  Id. at 252; see also, Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  In making this determination, the Court must "consider all evidence in the light most favorable to the party opposing the motion."  A.W. v. Jersey City Pub. Schs., 486 F.3d 791, 794 (3d Cir. 2007).

Moreover, a party who seeks to resist a summary judgment motion by citing to disputed material issues of fact must show by competent evidence that such factual disputes exist.  Further, "only evidence which is admissible at trial may be considered in ruling on a motion for summary judgment."  Countryside Oil Co., Inc. v. Travelers Ins. Co., 928 F.Supp. 474, 482 (D.N.J.1995).  This rule applies with particular force to parties who attempt to rely upon hearsay statements to establish material issues of fact which would preclude summary judgment.  With respect to such claims, it is well-settled that:  "In this circuit, hearsay statements can be considered on a motion for summary judgment [only] if they are capable of admission at trial."  Shelton v. University of Medicine & Dentistry of N.J., 223 F.3d 220, 223, n.2 (3d Cir. 2000), citing Stelwagon Mfg. v. Tarmac Roofing Sys., Inc., 63 F.3d 1267, 1275, n.17 (3d Cir. 1995).  In this regard it has been aptly observed that:

> It is clear that when considering a motion for summary judgement, a
> court may only consider evidence which is admissible at trial, and that
> a party can not rely on hearsay evidence when opposing a motion for

summary judgment.  See Buttice v. G.D. Searle & Co., 938 F.Supp. 561 (E.D.Mo.1996).   Additionally, a party must respond to a hearsay objection by demonstrating that the material would be admissible at trial under an exception to hearsay rule, or that the material is not hearsay.  See Burgess v. Allstate Ins. Co., 334 F.Supp.2d 1351 (N.D.Ga.2003). The mere possibility that a hearsay statement will be admissible at trial, does not permit its consideration at the summary judgment stage.  Henry v. Colonial Baking Co. of Dothan, 952 F.Supp. 744 (M.D.Ala.1996).

Bouriez v. Carnegie Mellon Univ., No. 02-2104, 2005 WL 2106582,* 9 (W.D.Pa. Aug. 26, 2005).  Thus, a party may not rely upon inadmissible hearsay assertions to avoid summary judgment.  Therefore, where a party simply presents inadmissible hearsay declarations in an attempt to establish a disputed material issue of fact, courts have typically rebuffed these efforts and held instead that summary judgment is appropriate.  See, e.g., Synthes v. Globus Medical, Inc., No. 04-1235, 2007 WL 2043184 (E.D.Pa. July 12, 2007); Bouriez v. Carnegie Mellon Univ., No. 02-2104, 2005 WL 2106582,* 9 (W.D.Pa. Aug. 26, 2005); Carpet Group Int'l v. Oriental Rug Importers Assoc., Inc., 256 F.Supp.2d 249 (D.N.J. 2003).

Similarly, it is well-settled that: "[o]ne cannot create an issue of fact merely by . . . denying averments . . . without producing any supporting evidence of the denials." Thimons v. PNC Bank, NA, 254 F.App'x 896, 899 (3d Cir. 2007)(citation omitted).  Thus, "[w]hen a motion for summary judgment is made and supported . . ., an adverse party may not rest upon mere allegations or denial." Fireman's Ins. Co.

Of Newark NJ v. DuFresne, 676 F.2d 965, 968 (3d Cir. 1982), see Sunshine Books, Ltd. v. Temple University, 697 F.2d 90, 96 (3d Cir. 1982)."   [A] mere denial is insufficient to raise a disputed issue of fact, and an unsubstantiated doubt as to the veracity of the opposing affidavit is also not sufficient."  Lockhart v. Hoenstine, 411 F.2d 455, 458 (3d Cir. 1969).  Furthermore, "a party resisting a [Rule 56] motion cannot expect to rely merely upon bare assertions, conclusory allegations or suspicions."  Gans v. Mundy, 762 F.2d 338, 341 (3d Cir. 1985)(citing Ness v. Marshall, 660 F.2d 517, 519 (3d Cir. 1981)).

Finally, a party who seeks to resist a summary judgment motion must also comply with Local Rule 56.1, which specifically directs a party opposing a motion for summary judgment to submit a "statement of the material facts, responding to the numbered paragraphs set forth in the statement required [to be filed by the movant], as to which it is contended that there exists a genuine issue to be tried"; if the nonmovant fails to do so, "[a]ll material facts set forth in the statement required to be served by the moving party will be deemed to be admitted."  L.R. 56.1.  Under the Local Rules, the failure to follow these instructions  and appropriately challenge the material facts tendered by the defendant means that those facts must be deemed, since:

> A failure to file a counter-statement equates to an admission of all the
> facts set forth in the movant's statement. This Local Rule serves several
> purposes. First, it is designed to aid the Court in its determination of
> whether any genuine issue of material fact is in dispute. Second, it
> affixes the burden imposed by Federal Rule of Civil Procedure 56(e), as
> recognized in <u>Celotex Corp. v. Catrett</u>, on the nonmoving party 'to go
> beyond the pleadings and by her own affidavits, or by the depositions,
> answers to interrogatories, and admissions on file, *designated specific
> facts showing that there is a genuine issue for trial*.' 477 U.S. 317, 324
> (1986) (internal quotations omitted) (emphasis added).

<u>Doe v. Winter</u>, No. 04-CV-2170, 2007 U.S. Dist. LEXIS 25517, *2 n.2 (M.D. Pa.

Apr. 5, 2007) (parallel citations omitted; court's emphasis). A party cannot evade

these litigation responsibilities in this regard simply by citing the fact that he is a *pro

se* litigant. These rules apply with equal force to all parties. <u>See</u> <u>Sanders v. Beard</u>,

No. 09-CV-1384, 2010 U.S. Dist. LEXIS, *15 (M.D. Pa. July 20, 2010) (*pro se*

parties "are not excused from complying with court orders and the local rules of

court"); <u>Thomas v. Norris</u>, No. 02-CV-01854, 2006 U.S. Dist. LEXIS 64347, *11

(M.D. Pa. Sept. 8, 2006) (*pro se* parties must follow the Federal Rules of Civil

Procedure).

### (2.)   <u>Ball's Claims Fail as a Matter of Law</u>

In conducting this legal analysis we must also be mindful of the constitutional

standards which govern Eighth Amendment claims, since Ball advances an Eighth

Amendment claim alleging that the defendants displayed deliberate indifference to

her serious medical needs by denying her eye care for two years in violation of the Eighth Amendment.

This Eighth Amendment claim is, in turn, judged against settled legal principles, principles which set precise and exacting standards for asserting a constitutional infraction, and is governed by the same overarching and animating constitutional benchmark.

As the United States Court of Appeals for the Third Circuit has observed:

> The Eighth Amendment protects against infliction of "cruel and unusual punishment." However, "not every governmental action affecting the interests or well-being of a prisoner is subject to Eighth Amendment scrutiny." Whitley v. Albers, 475 U.S. 312, 319, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986). "After incarceration, only the unnecessary and wanton infliction of pain constitutes cruel and unusual punishment forbidden by the Eighth Amendment." Id. (citation and internal quotations omitted). "It is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause, whether that conduct occurs in connection with establishing conditions of confinement, supplying medical needs, or restoring official control over a tumultuous cellblock." Id. Resolution of an Eighth Amendment claim therefore "mandate[s] an inquiry into a prison official's state of mind." Wilson v. Seiter, 501 U.S. 294, 299, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991). Two considerations define that inquiry. We must first determine if the deprivation was sufficiently serious to fall within the Eighth Amendment's zone of protections. Id. at 298, 111 S.Ct. 2321. If not, our inquiry is at an end. However, if the deprivation is sufficiently serious, we must determine if the officials acted with a sufficiently culpable state of mind. Id. In other words, we must determine if they were motivated by a desire to inflict unnecessary and wanton pain. "What is necessary to establish an 'unnecessary and wanton infliction of pain ...' varies according to the

nature of the alleged constitutional violation."  Hudson v. McMillian, 503 U.S. 1, 5, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992).

Fuentes v. Wagner, 206 F.3d 335, 344 45 (3d Cir. 2000).

These principles apply with particular force to claims, like those made by Ball, which are premised on the degree of medical care which a prisoner receives. Liberally construed, the gravamen of Ball's complaint is that prison officials have violated her rights under the Eighth Amendment to the United States Constitution by displaying "deliberate indifference" to this inmate's medical needs.  Ball faces an exacting burden in advancing this Eighth Amendment claim against prison officials in their individual capacities.  To sustain such a claim, she must plead facts which:

> [M]eet two requirements:   (1) "the deprivation alleged must be, objectively, sufficiently serious;" and (2) the "prison official must have a sufficiently culpable state of mind."  Farmer v. Brennan, 511 U.S. 825, 834, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994) (quotation marks and citations omitted).  In prison conditions cases, "that state of mind is one of 'deliberate indifference' to inmate health or safety."  Id.  "Deliberate indifference" is a subjective standard under Farmer-the prison official-defendant must actually have known or been aware of the excessive risk to inmate safety.

Beers-Capitol v. Whetzel,256 F.3d 120, 125 (3d Cir. 2001).

By including a subjective intent component in this Eighth Amendment benchmark, the courts have held that a mere generalized knowledge that prisons are dangerous places does not give rise to an Eighth Amendment claim.  See Jones v. Beard, 145 F.

24

App'x 743 (3d Cir. 2005)(finding no Eighth Amendment violation where inmate-plaintiff complained about cellmate who had a history of psychological problems, but where plaintiff failed to articulate a specific threat of harm during the weeks prior to an attack.)  In short, when "analyzing deliberate indifference, a court must determine whether the prison official 'acted or failed to act despite his knowledge of a substantial risk of serious harm.' Farmer v. Brennan, 511 U.S. 825, 841 (1994).  A prisoner plaintiff must prove that the prison official 'knows of and disregards an excessive risk to inmate health or safety.' Id . at 837." Garvey v. Martinez, 08-2217, 2010 WL 569852, at *6 (M.D.Pa. Feb. 11, 2010).

These principles apply with particular force to Eighth Amendment claims premised upon inadequate medical care.  In the medical context, a constitutional violation under the Eighth Amendment occurs only when state officials are deliberately indifferent to an inmate's serious medical needs.  Estelle v. Gamble, 429 U.S. 97, 105 (1976).  To establish a violation of his constitutional right to adequate medical care in accordance with this standard, Ball is required to allege facts that demonstrates (1) a serious medical need, and (2) acts or omissions by prison officials that indicate deliberate indifference to that need.  Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999).

Deliberate indifference to a serious medical need involves the "unnecessary and wanton infliction of pain." Estelle, 429 U.S. at 104. Such indifference may be evidenced by an intentional refusal to provide care, delayed provision of medical treatment for non-medical reasons, denial of prescribed medical treatment, denial of reasonable requests for treatment that results in suffering or risk of injury, Durmer v. O'Carroll, 991 F.2d 64, 68 (3d Cir. 1993), or "persistent conduct in the face of resultant pain and risk of permanent injury," White v. Napoleon, 897 F.2d 103, 109 (3d Cir. 1990).

However, it is also clear that the mere misdiagnosis of a condition or medical need, or negligent treatment provided for a condition, is not actionable as an Eighth Amendment claim because medical malpractice standing alone is not a constitutional violation. Estelle, 429 U.S. at 106. "Indeed, prison authorities are accorded considerable latitude in the diagnosis and treatment of prisoners." Durmer, 991 F.2d at 67 (citations omitted). Furthermore, in a prison medical context, deliberate indifference is generally not found when some significant level of medical care has been offered to the inmate. Clark v. Doe, 2000 U.S. Dist. LEXIS 14999, 2000 WL 1522855, at *2 (E.D.Pa. Oct. 13, 2000)("courts have consistently rejected Eighth Amendment claims where an inmate has received some level of medical care"). Thus, such complaints fail as constitutional claims under § 1983 since "the exercise by a

doctor of his professional judgment is never deliberate indifference.  See e.g. Brown v. Borough of Chambersburg, 903 F.2d 274, 278 (3d Cir.1990) ('[A]s long as a physician exercises professional judgment his behavior will not violate a prisoner's constitutional rights.')".  Gindraw v. Dendler, 967 F.Supp. 833, 836 (E.D. Pa. 1997).

Applying this exacting standard, courts have frequently rejected Eighth Amendment claims that are based upon the level of professional care that an inmate received; see, e.g., Ham v. Greer, 269 F. App'x 149 (3d Cir. 2008); James v. Dep't of Corrections, 230 F. App'x 195 (3d. Cir. 2007); Gillespie v. Hogan, 182 F. App'x 103 (3d Cir. 2006); Bronson v. White, No. 05-2150, 2007 WL 3033865 (M.D. Pa. Oct. 15, 2007); Gindraw v. Dendler, 967 F.Supp. 833 (E.D. Pa. 1997), particularly where it can be shown that significant medical services were provided to the inmate but the prisoner is dissatisfied with the outcome of these services.  Instead, courts have defined the precise burden which an inmate must sustain in order to advance an Eighth Amendment claim against a healthcare professional premised on allegedly inadequate care, stating that:

> The district court [may] properly dis[miss an] Eighth Amendment claim, as it concerned [a care giver], because [the] allegations merely amounted to a disagreement over the proper course of his treatment and thus failed to allege a reckless disregard with respect to his . . . care.  The standard for cruel and unusual punishment under the Eighth Amendment, established by the Supreme Court in Estelle v. Gamble, 429 U.S. 97, 104 (1976), and its progeny, has two prongs:  1) deliberate indifference by

prison officials and 2) serious medical needs. "It is well-settled that claims of negligence or medical malpractice, without some more culpable state of mind, do not constitute 'deliberate indifference.' " "Nor does mere disagreement as to the proper medical treatment support a claim of an eighth amendment violation." . . . . [The inmate] alleged no undue delay in receiving treatment and, as the district court noted, the evidence he presented established that he received timely care . . . . Although [an inmate plaintiff] may have preferred a different course of treatment, [t]his preference alone cannot establish deliberate indifference as such second-guessing is not the province of the courts.

James, 230 F.App'x. at 197-198.(citations omitted).

Furthermore, it is well-settled that an inmate's dissatisfaction with a course of medical treatment, standing alone, does not give rise to a viable Eighth Amendment claim. See Taylor v. Norris, 36 Fed. Appx. 228, 229 (8th Cir. 2002) (deliberate indifference claim failed when it boiled down to a disagreement over recommended treatment for hernias and decision not to schedule a doctor's appointment); Abdul-Wadood v. Nathan, 91 F.3d 1023, 1024-35 (7th Cir.1996) (inmate's disagreement with selection of medicine and therapy for sickle cell anemia falls well short of demonstrating deliberate indifference); Sherrer v. Stephen, 50 F.3d 496, 497 (8th Cir.1994) (inmate's "desire for a replacement joint instead of fusion surgery is merely a disagreement with the course of medical treatment and does not state a constitutional claim"); Kayser v. Caspari, 16 F.3d 280, 281 (8th Cir.1994) (prison provided escalating level of treatment for inmates's ailments over time, and inmate's

28

disagreement with course of medical treatment was insufficient basis for Eighth Amendment violation); Czajka v. Caspari, 995 F.2d 870, 871 (8th Cir.1993) (inmate's mere disagreement with doctor's informed decision to delay surgery does not establish Eighth Amendment claim); Smith v. Marcantonio, 910 F.2d 500, 502 (8th Cir.1990) (inmate failed to prove deliberate indifference where his complaints represented nothing more than mere disagreement with course of his medical treatment); Lair v. Oglesby, 859 F.2d 605, 606 (8th Cir.1988) (disagreement about whether doctor should have prescribed medication does not result in constitutional violation); Martin v. Sargent, 780 F.2d 1334, 1339 (8th Cir.1985) (Inmate failed to state facts indicating doctor deliberately disregarded his medical problem; inmate's disagreement as to proper medical treatment does not give rise to Eighth Amendment violation). Therefore, where a dispute in essence entails nothing more than a disagreement between an inmate and doctors over alternate treatment plans, the inmate's complaint will fail as a constitutional claim under § 1983.  See e.g., Gause v. Diguglielmo, 339 F.App'x 132 (3d Cir. 2009)(dispute over choice of medication does not rise to the level of an Eighth Amendment violation); Innis v. Wilson, 334 F.App'x 454 (3d Cir. 2009)(same); Rozzelle v. Rossi, 307 F.App'x 640 (3d Cir. 2008)(same); Whooten v. Bussanich, 248 F.App'x 324 (3d Cir. 2007)(same); Ascenzi v. Diaz, 247 F.App'x 390 (3d Cir. 2007)(same), since "the exercise by a doctor of his professional judgment is

29

never deliberate indifference." <u>Gindraw v. Dendler</u>, 967 F.Supp. 833, 836 (E.D. Pa. 1997)(citations omitted).   In short, in the context of the Eighth Amendment, any attempt to second-guess the propriety or adequacy of a particular course of treatment is disavowed by courts since such determinations remain a question of sound professional medical judgment. <u>Inmates of Allegheny County Jail v. Pierce</u>, 612 F.2d 754, 762 (3d Cir. 1979) (quoting <u>Bowring v. Godwin</u>, 551 F.2d 44, 48 (4th Cir. 1977)).

Judged by these legal benchmarks, Ball's Eighth Amendment claims relating to her vision care fail as a matter of law, given the medical records before the Court. Those records, which are uncontested, show that Ball received on-going vision care from 2009 through 2011, the time frame embraced by this lawsuit.   Any interruptions in this care were entirely Ball's fault, as she persisted in misconduct, including persistent and bizarre behavior like "fecal smearing all weekend," (Doc. 124., ¶14), behavior by Ball which frustrated and delayed some treatment efforts.   Furthermore, these medical records reveal that Ball was a malingerer who suffered from no serious vision problems.   Thus, far from displaying deliberate indifference to Ball's needs, these records disclose that Ball received careful, competent, compassionate vision care, even after she insisted on creating obstacles to that care, including fecal

encrusted obstacles.  Therefore, Ball's claims plainly fail on their merits and should be dismissed.

Thus, when we consider the final <u>Poulis</u> factor, the merits of a non-compliant plaintiff's claims, a merits analysis reveals that the defendants are entitled to dismissal of Ball's claims, a consideration which also weighs heavily against Ball. Accordingly, we find that all of the <u>Poulis</u> factors call for dismissal of this case.

## III.   <u>Recommendation</u>

Accordingly, for the foregoing reasons, IT IS RECOMMENDED that the defendants' motions for summary judgment (Docs. 117 and 122.), which have not been opposed, be GRANTED and the plaintiff's complaint be dismissed.

The Parties are further placed on notice that pursuant to Local Rule 72.3:

> Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof.  Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections.  The briefing requirements set forth in Local Rule 72.2 shall apply.  A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge.  The judge, however,

need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record.   The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this 12th day of May 2015.

***S/Martin C.  Carlson***

Martin C. Carlson
United States Magistrate Judge
